ALVA WOOD AND LOYAL M. WOOD *v.* JAMES N. WILLARD AND OTHERS.

*Trespass. Evidence. Declarations. Constructive Possession.*

In a controversy respecting the location of the dividing line between lands of individuals, the declarations of deceased persons, who had actual knowledge as to the location of such line, or who had peculiar means of knowledge, so that it may fairly be inferred that they had actual knowledge of the same, made at a time when they had no interest to misrepresent, and made when upon, or in the immediate vicinity of the line, and when pointing it out, may be received as to the location of such line, when from lapse of time there can be no reasonable probability that evidence can be obtained from those who had actual knowledge on the subject.

Where the defendant claimed by adverse possession to a line not marked so as to be discernable, the fact that he had for over twenty years enclosed the land in dispute with his other lands by a fence which extended and embraced other land of the plaintiff beyond the line to which he claimed, would not give the defendant constructive possession to such line.

TRESPASS on the freehold. Plea, the general issue, and trial by jury, Windsor County Court, December Term, 1863, BARRETT, J., presiding.

The controversy between the parties was in relation to the dividing line between lands owned by the plaintiffs and lands owned by James N. Willard. The plaintiffs owned the west part, and the said Willard the east part, of what is known as the "Governor's Right,"

being five hundred acres of land reserved by Governor Wentworth to himself in the original charter of the town of Hartland. The plaintiffs claim title by virtue of a deed from David H. Sumner to them, dated April 24th, 1860, and the defendant, James N. Willard, by virtue of a deed from Thomas A. Denny to him, dated January 17th, 1829, which deeds were introduced in evidence by the respective parties. The plaintiffs also introduced in evidence certified copies of the deeds of partition of this land, between the then owners and occupants, dated August 26th, 1812, being from Oliver Gallup and Thomas Denny to Charles Willard, of the west part, and from Charles Willard to said Gallup and Denny, of the east part, and a mortgage deed from Charles Willard to David H. Sumner, of the west part, dated March 22d, 1817, and a writ of possession in favor of said Sumner against Charles Willard, reciting a decree of foreclosure of said mortgage, dated June 20th, 1820, on the back of which was a writing, without date, signed by Charles Willard, acknowledging that he held possession of said land under said Sumner.

The defendants also introduced in evidence a deed from Thomas Denny to Thomas A. Denny, dated April 5th, 1819, conveying the same land covered by the deed to James N. Willard from Thomas A. Denny, and a deed from Jonathan H. Hubbard to James N. Willard, dated December 16th, 1833, conveying lands lying northerly of the land in controversy, and north of Hartland town line.

It appeared in evidence on trial, that before the deeds of partition were executed, a suit was pending in court in relation to the division of said lands, in which Thomas Denny and Charles Willard were parties, and that at that time said Willard lived on the west part, and said Denny on the east part, of the " Governor's Right," and that the controversy in said suit was as to the dividing line between their respective lands ; and that the suit was taken out of court and the controversy settled by the parties by their agreeing upon a division of the lands, and said deeds of partition were thereupon executed.

It further appeared in evidence, that Charles Willard lived upon the land now owned by the plaintiffs ever after said deeds of partition were executed, until the death of his son, Charles Willard, Jr.,

which occurred in November, 1845, and that he remained in possession in his own right until after Sumner had foreclosed his mortgage, and after that in possession under Sumner, as Sumner testified,— who was the only witness on this point,—until he leased the same to Charles Willard, Jr. ; and that Charles Willard, Jr., remained in possession eighteen years, successively, until his death, as tenant to said Sumner. After the farm was thus leased to Charles Willard, Jr., his father, Charles Willard, continued to live with him upon the farm, and worked upon, and assisted to carry on the same to the extent of his ability.

It further appeared in evidence, that Thomas Denny and Thomas A. Denny, after the settlement of said suit and the execution of said deeds of partition, both continued to live upon the east portion of the "Governor's Right" until Thomas A. Denny deeded to James N. Willard, as above stated. That after the execution of said deed he, Willard, moved on to said farm the latter part of February, 1829, and that Thomas Denny and Thomas A. Denny remained on the farm until after the first of April then next, and kept their stock there, and Thomas A. Denny, after the first of April, remained on said farm from one and one-half to two years, as a boarder with James N. Willard.

It appeared in evidence, that the land in controversy is bounded northerly by Hartford town line and southerly by Quechee river. The plaintiffs claimed as their corner near Quechee river, a hemlock tree, standing between nine and ten rods northerly from the river, and as their corner on the town line, another hemlock tree, and that the true division line ran between these trees.

The defendants claimed that the true corner on the Quechee river was at the mouth of a little brook, a few rods west of the line as claimed by the plaintiffs, and gave evidence tending to show that formerly there stood at the mouth of this brook, on the bank of the river, a hemlock tree, marked, which was washed away by the river, together with the bank on which it stood, about thirty years ago ; and that the fence which divided this portion of the respective lands commenced at this hemlock tree and run northerly, some few rods west of the present fence.

The defendants claimed, as the true corner on the town line, a cer-

tain soft maple tree, standing about eighteen rods west of the hemlock claimed by the plaintiffs as a corner, and gave evidence tending to prove, that ever since James N. Willard purchased said land, he has always claimed this maple as the corner between his land and the plaintiffs' land on the town line, and has always thus claimed the said hemlock tree standing at the mouth of the brook, and the point where the same stood after the said tree was washed away, as the true corner between said lands on the Quechee.    James N. Willard has always remained in possession of said lands purchased of said Denny, after taking possession thereof as above stated.

The defendants, after testimony had been adduced in respect to their title, and the title and occupancy of Thomas Denny and Thomas A. Denny, and the title and occupancy of Charles Willard and Charles Willard, Jr., and the title and occupancy of one Johnson of the lot, called the Johnson lot, lying north of the plaintiffs' land, and north of Hartford town line, and west of the Hubbard lot, and after showing the decease of all said persons, showed by the testimony of James N. Willard, that in the spring after he purchased of Thomas A. Denny, said Denny told him about said original law-suit, and the settlement of the same, and offered to get Charles Willard and go with him and James N. upon the land and point out the corners as agreed upon by the parties at the time of the settlement of said controversy; and that Denny did, after the 1st of April of that spring, get Charles Willard, and they all three went upon the land in controversy, at the corner near Quechee river; and offered to prove by the testimony of James N. Willard, that both Charles Willard and Thomas A. Denny, on this occasion, pointed out the marked hemlock tree as the corner which then stood near the mouth of the brook, on the bank of the Quechee, but has since been washed away, and told him, said James N., that that tree was the corner on the river between the lands now in controversy, and was the corner agreed upon in the settlement of said original controversy.   (Said tree is the one referred to in the testimony as being claimed by the defendants as the corner.)  This testimony was objected to by the plaintiffs and excluded by the court,—to which the defendants excepted.

The defendants further offered to prove by the testimony of James N. Willard, Jr., that whilst Charles Willard, Jr., was in possession

Wood et al. *v.* Willard et al.

of the land now owned by the plaintiffs, as tenant under Sumner, he spoke to the witness, who was living with his father, James N., Sen., about straightening the fence and putting it on the line, and spoke of beginning at the soft maple tree on the town line as the corner. Also, that Charles Willard, Jr., while so in possession, spoke to the witness about said hemlock, which formerly stood on the bank of the river, at the mouth of the brook, as the corner on the river, and said it was the corner between the lands now in controversy. Also, that Charles Willard, Sen., whilst living with his son, Charles, Jr., upon the land now owned by the plaintiffs, and after he had ceased to have possession of the same under Sumner, told the witness that said hemlock which formerly stood at the mouth of the brook, was the corner between the lands now in controversy. All of which was objected to by the plaintiffs, and severally excluded by the court,—to which the defendants excepted.

The defendants further offered to prove other sayings of Charles Willard of the same character, to which the plaintiffs objected and the court excluded the same,—to which the defendants excepted.

The defendants' testimony tended further to prove, that the land where the trespass was claimed to have been committed by the defendants, was enclosed by a fence with James N. Willard's other lands, and had been so enclosed for some twenty-six or twenty-seven years, and that this fence enclosed land belonging to the plaintiffs not claimed by James N. Willard, as well as the land in controversy, with the Hubbard lot and said Willard's other lands, and that said Willard had, ever after he purchased said land, claimed the soft maple as his corner, and a line directly from the soft maple to a hemlock near the mouth of the brook, as the true dividing line between his land and the plaintiffs ; and that James N. Willard and his sons, by his direction, had, on various occasions and in different years, for the last twenty-six years, cut and taken wood and timber from the land in controversy, claiming the land as his own, and that no person had ever disputed his right to do so ; and he claimed that he had thereby acquired a right to the land in controversy by possession.

The defendants requested the court to charge the jury, that if they found that the said James N. Willard had had possession of the land in controversy for over fifteen years, claiming to be the owner

thereof, as his testimony tended to prove, and during all that time the same had been enclosed with his other lands, as the testimony tended to prove, and during all that time had claimed the soft maple as his corner, and a direct line from this maple to the said hemlock at the mouth of the brook, that his possession would be limited by his claim, and would be adverse to the extent of his claim, but would not include the lands of the plaintiffs so enclosed with the defendants' lands, which were not claimed by said Willard as belonging to him. The court declined to charge as requested.

There was a vast amount of other testimony upon both sides in respect to the location of the dividing line between the lands of the parties and the trespasses alleged to have been committed.

Upon the subject of said request, the court charged the jury, that in order for the defendant to acquire title beyond his actual, and by constructive possession, that it was necessary that he should have claimed to a definite line, indicated and marked upon the land so as to be discernable,—explaining to the jury the subject of actual and constructive possession in a manner satisfactory to both parties. The court further charged, that the fact of such an enclosure of the land in dispute with other lands of the defendants, as the evidence tended to show, by a fence which extended and embraced land of the plaintiffs beyond the line to which the defendants claimed, and which did not indicate any line to which he claimed, would not give the defendant a constructive possession to such line by virtue of his actual possession of a part of the land he now claims to hold by reason of adverse possession. To the charge as given, and to the failure of the court to charge as requested, the defendants excepted.

As to the evidence of sayings which were received subject to a proper charge in relation thereto, the court told the jury, that what Charles Willard said after the title had passed from him and had become absolute in Mr. Sumner, whether he was occupying as tenant of Sumner, or was living with his son, who was tenant of Sumner, and what Charles Willard, Jr., said while he was occupying as tenant of Sumner, as to the corners or lines of said land, did not bind Mr. Sumner, nor could be considered as evidence against him or the present plaintiffs as to what and where said corners and lines were. That what Thomas A. Denny said while he held title to the land

conveyed by him to the defendant, James N. Willard, tending to show the line to be further west than said Sumner and the plaintiffs claimed it to be, as it would not, if he were living and still holding the same title, be evidence in his favor, so it cannot be considered as evidence in favor of the defendant, who holds under him, against the plaintiffs, who hold under said Sumner. In other respects the court gave such instructions as to this evidence as the case called for. To the foregoing instructions the defendants excepted.

Verdict for the plaintiffs.

*Converse & French* and *A. Tracy*, for the defendants.

I. The testimony offered by the defendants should have been received. This testimony consisted of the declarations of *Charles Willard*, *Charles Willard, Jr.*, *Thomas Denny* and *Thomas A. Denny* and *Ulysses Johnson*, now deceased, on various occasions, and under various circumstances, as to the corners and line now in controversy.

We insist that their declarations were competent evidence as being the best testimony which the nature of the case would permit, considering the lapse of time since the settlement of the original controversy and the agreement as to the division of the lands.

From the very necessity of the case, and on principle, we insist that such testimony should be received; but we are not without the fullest authority in this country to sustain us. The rule in this country was settled as we claim it, in the earliest controversies in relation to dividing lines to lands, and has been steadily adhered to, and has become the *American rule* upon the subject. In *England* they confine such declarations to the boundaries of *parishes, manors* and the like, but it is not so restricted in this country. 1 Greenleaf's Ev. 175, (§ 145) notes (1842); 3 Dane's Abt. 397, 398, (Art. 4, §§ 1 to 6); *Boardman et al.* v. *Reed et al.*, 6 Peters, 340, 341; *Van Deusen* v. *Turner*, 12 Pick. 532; *Daggett* v. *Shaw*, 5 Met. 223, 227, (1842); *Porter* v. *Warner*, 2 Root, 22, (1793); *Higley* v. *Bidwell*, 9 Conn. 446, 450; *Wooster* v. *Butler*, 13 *ib.* 308, 315; *Kinney* v. *Farnsworth*, 17 *ib.* 355, 362, (1845); *Lawrence* v. *Hayes et al.*, 5 N. H. 33, 37; *Smith* v. *Powers*, 15 *ib.* 546, 563, (1844.)

The same rule was virtually recognized in this state in a case decided as early as 1817. *Pettibone* v. *Rose*, Brayton, 77.

Wood et al. *v.* Willard et al.

The cases cited by Mr. Greenleaf in his note (p. 176,) show such to be the rule in *North Carolina, South Carolina, Virginia, Tennessee* and *Kentucky.* The decisions in the American courts seem to be uniform upon the question. There may well be a distinction between the decisions in this country and in England. The newness of our country, small proprietorships, and the perishable nature of division bounds would seem to require the rule of evidence as we insist it is.

The declarations of a tenant in possession, as to the character, extent and manner of his possession, are competent evidence against his landlord and those claiming under him. *Beecher* v. *Parmelee et al.,* 9 Vt. 352; *Carpenter* v. *Hollister et al.,* 13 Vt. 556; *Jackson* v. *Bard,* 4 Johns. 230; *Jackson* v. *McCall,* 10 *ib.* 376; *Williams* v. *Ensign,* 4 Conn. 456; *Davis* v. *Pierce et al.,* 2 Term R. 53; 1 Greenleaf Ev. 125, § 109.

II. The court should have instructed the jury as to the defendant James N. Willard's *possession* in accordance with the request. This possession was *adverse* to the extent of his claim. He was in the *actual* possession of the land in controversy enclosed by a fence, and would have constructive possession of all the land enclosed by the fence, were it not that he had *voluntarily limited his claim.* To the extent of his claim as made, we insist that his possession was good. *Constructive possession* has always been regarded as extending to *visible boundaries,* or to the boundaries *described* in a *deed* under which the party enters. This for the reason that an adverse claimant *can, upon inquiry, ascertain the extent of the party's claim.* *Crowell* v. *Beebe,* 10 Vt. 33; *Hull* v. *Fuller,* 7 Vt. 101; *Chandler* v. *Spear,* 22 Vt. 388–404; *Brown* v. *Edson, ib.* 357–362; *Buck et al.* v. *Squiers,* 23 Vt. 498–504; *Swift* v. *Gage et al.,* 26 Vt. 224–228; *Beecher* v. *Parmelee et al.,* 9 Vt. 352.

A party may *limit his possession,* by his acts and declarations, within less bounds than the survey under which he enters. *Brown* v. *Edson,* 22 Vt. 362.

*Washburn & Marsh,* for the plaintiffs.

1. The declarations of the owner of land in enlargement of his title or boundaries, cannot be proved as evidence in his own favor, or in favor of his grantee. *Smith* v. *Martin,* 17 Conn. 399.

Wood et al. v. Willard et al.

2. The declarations of a former owner of land made after he had parted with his title, and while he continued to occupy as tenant under his grantee, as to the original boundaries of the land, cannot affect the *title of his grantee*, or of any one *claiming under his grantee.* Pierce v. Faunce, 37 Maine, 68.

3. In no event is the class of testimony offered by the defendant and excluded by the court, even when it comes within the rule necessary for its admissibility, ever favored by the courts ; and unless the testimony offered comes clearly within all ·the conditions precedent for its reception, it will not be received. See Am. Law Register, Sept. No., 1864.

All the declarants whose testimony was excluded, ceased to have any interest in the land *at the time when they made the statements,* now sought to be proved through the lips of the several defendants and their friends.

They lack then the quality most necessary for their admissibility, of being declarations against their interest,—against their interest in any way,—saying nothing about being against their pecuniary interest. See *Ware* v. *Brookhouse,* 7 Gray, 454 ; *Bartlett* v. *Emerson,* 7 Gray, 174 ; *Flagg* v. *Mason,* 8 Gray, 556 ; *Currier* v. *Gale,* 14 Gray, 504 ; *Daggett* v. *Shaw,* 5 Met. 223 ; *Mary* v. *Stone,* 8 Cush. 4 ; *Shepherd* v. *Thompson,* 4 N. H. 213 ; *Waring* v. *Warren,* 1 Johns. 340 ; 1 Greenleaf Ev. §§ 145, 147, 148, note ; *Stark* v. *Buswell,* 6 Hill, 405 ; *Carpenter* v. *Hollister et al.,* 13 Vt. 552 ; *Beach* v. *Wise,* 1 Hill, 612 ; *Bristol* v. *Darn,* 12 Wend. 142, and note ; *Clarke* v. *Waite,* 12 Mass. 439 ; *Bridges* v. *Eggleston,* 14 Mass. 250 ; 17 Conn. 400.

PIERPOINT, J. This is an action of trespass on the freehold, and the controversy between the parties at the trial below was as to the location of the dividing line between lands owned by the plaintiffs and lands owned by said James N. Willard.

It appears from the bill of exceptions, that prior to the year 1812 a controversy had arisen between one Thomas Denny and Charles Willard, who were then the owners of these lands, as to the dividing line between their respective lands, and a suit between them was pending in court.

This controversy was settled by the parties, by their agreeing upon a division of said lands, and deeds of partition were thereupon exe-

---

---

cuted, dated the 26th day of August, 1812. The line of division then agreed upon is the line now in dispute. The said Charles Willard, from whom the plaintiffs' title is derived, took the west part, and the said Denny, from whom the defendant's title is derived, took the east part. On the 22d of March, 1817, Charles Willard mortgaged his part to David H. Sumner, who perfected his title thereto by foreclosure, and a writ of possession in June, 1820, and deeded the same to the plaintiffs on the 24th day of April, 1860.

Thomas Denny conveyed his half to Thomas A. Denny April 5th, 1819, and Thomas A. Denny conveyed the same to the defendant, James N. Willard, January 17th, 1829.

The land in controversy is bounded northerly by Hartford town line, and southerly by Quechee river.

· The defendant claimed, that the true corner on the Quechee river was at the mouth of a little brook, and that formerly there stood at the mouth of this brook, on the bank of the river, a hemlock tree marked, which was washed away by the river, with the bank on which it stood some thirty years ago, and that this tree was the corner on the river. The defendants also claimed, that a · certain soft maple tree standing on the Hartford town line, was the true corner there, and that the division line between the said James N. Willard's land, and that of the plaintiffs, was a line drawn from the said hemlock · to the said maple. And to establish this claim, he offered to prove that on several occasions, after the said Charles Willard had ceased to be the owner of the land, now owned by the plaintiffs, or to have any interest therein or in either of said pieces, and before any controversy had arisen, he being upon the land, and at the place, pointed out the said hemlock tree, and the said soft maple tree, to the witnesses, as being the corners of the said lots, as agreed upon at the time of the division of the said lots between the said Thomas Denny and himself.

The defendant offered similar acts and declarations of the said Thomas Denny, made under like circumstances. The said Charles Willard and the said Thomas Denny being both dead.

These acts and declarations were objected to and excluded by the court, and in this it is claimed there was error.

These declarations of Willard and Denny, were hearsay testimony

Wood et al. *v.* Willard et al.

only, and clearly come within the general rule, that such testimony is not admissible. To this rule however there are certain well established exceptions, and the question here is whether the evidence offered comes within any of those exceptions.

In England it is well settled that in questions as to ancient boundaries, concerning the extent of public municipal jurisdictions, public reputation, or the particular declarations of deceased persons, made before the controversy arises, are admissible.    See Phil. Ev. 4th Amer. Ed. 219, note 87, where the authorities are collected and examined, a further reference to which is unnecessary here.

But the exception has not been extended there, to questions as to the boundaries between the estates of private individuals.

This exception seems to be founded in the necessity of the case. Questions as to these boundaries may arise long after all persons having any actual knowledge as to their location, shall have passed away; and there may be no other way of proving them, except by public reputation and tradition.    The same reason seems to have led to an exception allowing this class of evidence in questions as to pedigree.

The reason upon which this exception is based, would seem to apply with equal force to questions as to boundaries between individuals.    The fact that many persons may be interested in the establishing of the line of a municipal jurisdiction, cannot increase the difficulty of proving it under the general rule of evidence.

The landed estates in England are large and the boundaries thereof doubtless generally settled and clearly defined, so that questions as to them may not so frequently arise, and the necessity for resorting to this class of evidence for that reason, may not be so great, as in the case of municipal boundaries.    In this country it is not so.    In many of the states, and especially in this state, the territory within their limits was first divided into townships, and these were soon after subdivided into small lots, and distributed between the several proprietors.    Almost the only evidence that was left upon the land, to indicate the location of the lines either of the townships, or of the division between the proprietors, was marks upon the trees standing thereon, and these evidences, from lapse of time, accidental causes,

and the cutting off the timber, are almost entirely obliterated, at least such is the fact in large portions of this state.

Questions are now constantly arising between individuals as to the location of these original lines, which to a great extent constitute the present division lines between adjoining land owners. How are these lines to be established? If it be said that it must be by the testimony of witnesses who have personal knowledge of their original location, they cannot be proved at all, as in the great majority of cases, all such persons are now dead.

The necessity resulting from the impossibility of proving the location of such ancient lines and boundaries, has led the courts in several of our sister states to extend the exception to the general rule excluding hearsay testimony, so far as to admit the declarations of deceased persons, who had knowledge on the subject, as to the location of ancient boundaries between the lands of private individuals.

Thus in *Smith* v. *Powers*, 15 N. H. 546, which was an action of trespass on the freehold, it appears from the case that there was a controversy between the parties respecting the true situation of the northerly and easterly lines of the lot in question. The plaintiff introduced evidence, that one John Rowell lived on the lot with his son. It did not appear what title he had, or that he had ever parted with it, if he had any, except that he moved away thirty or forty years before, and had not lived on the lot since. The plaintiff offered the declarations of said John, who had deceased, made after he had moved from the lot, that a certain birch tree, standing near the river, was the south-east corner of the lot. This was objected to and admitted.

In disposing of this question, PARKER, Ch. J., in his opinion says: " As to the declarations of John Rowell. It does not appear that he had any interest in making them, or any purpose to subserve thereby. It is true, as the defendant's counsel contend, that the decisions in England seem to restrict the evidence of the declarations of deceased persons, respecting boundaries, to cases which relate to public rights, or to boundaries in which several persons are interested, or to what the deceased said relating to the public opinion, respecting the bound-

ary. But the testimony has not been limited in this country. The authorities are amply sufficient to sustain the principle that the declarations of a person deceased, who appeared to have had means of knowledge, and no interest in making the declarations, are competent evidence upon a question of boundary, even in a case of private rights. Upon this principle the declarations of John Rowell are well admitted. It was in evidence that he pointed out the boundary." The same principle is recognized in *Lawrence* v. *Haynes*, 5 N. H. 37.

The same rule prevails in Connecticut. *Higley* v. *Bidwell*, 9 Conn. 446; *Wooster* v. *Butler*, 13 Conn. 308; *Kinney* v. *Farnsworth*, 17 Conn. 355. In the latter case, STORRS, J., says: "Within whatever limits the rule of evidence as to the admissibility of reputation on questions of boundary, is restricted elsewhere, it is well settled in this state that general reputation is admissible for the purpose of showing, not only public boundaries, such as those between towns, societies, parishes, and other public territorial divisions, but also the boundaries of lands of individual proprietors.

In *Boardman* v. *The Lessees of Reed et al.*, 6 Peters, 328, a question arose as to the admissibility of proof of the declarations of a deceased person, as to certain facts relating to a corner in dispute between the parties. Judge McLEAN in his opinion states the rule as follows: " That boundaries may be proved by hearsay testimony, is a rule well settled; and the necessity or propriety of which is not now questioned. Some difference of opinion may exist as to the application of this rule, but there can be none as to its legal force. Landmarks are frequently formed of perishable materials, which pass away with the generation in which they are made. By the improvement of the country, and from other causes they are often destroyed. It is therefore important in many cases that hearsay or reputation should be received to establish ancient boundaries." This, says Mr. Hill in note 87, Phil. Ev. 219, well expresses the doctrine, and the reason of the doctrine, as it is now understood in the American courts. See also 2 Sergt. & Rawle, 69; 1 Watts & Sergt. 68; 3 McCord, 227.

From such cases as we have had an opportunity to examine, and from the other cases referred to by Mr. Hill in the note aforesaid,

---

---

where all the cases are collected and examined, we think a disposition is apparent in many of the American courts to extend the exception in favor of this class of testimony to ancient boundaries between individual proprietors ; and that from a majority of the cases the principle may fairly be deduced, that the declarations of deceased persons, who had actual knowledge as to the location of such boundaries, or who from their connection with the property itself, or their situation and experience in regard to such boundaries, and the surveys thereof, had peculiar means of knowledge, so that it may fairly be inferred that they had actual knowledge of the same, made at a time when they had no interest to misrepresent, and made when upon, or in the immediate vicinity of the boundary referred to, and pointing it out, may be received as to the location of such boundary, when from lapse of time, there can be no reasonable probability that evidence can be obtained from those who had actual knowledge on the subject.

Under this rule we think the evidence as to the acts and declarations of said Willard and Denny, and perhaps of some of the other persons should have been admitted. The line in question was established between fifty and sixty years ago, and from aught that appears all the persons that had any actual knowledge of its location, are dead, and the necessity for a resort to this class of evidence seems to be as strong in this case as in any that can arise.

The defendant Willard further claimed on the trial below, that if he failed to establish the line as claimed by him, as the true line, still he had acquired a title up to that line by adverse possession, and insists that there was error in the charge of the court in respect to this claim.

In regard to this it is sufficient for present purposes to say that upon the evidence as detailed in the exceptions, we think the charge of the court was entirely correct.

Judgment reversed and case remanded.