JOHN COOLIDGE *v.* WARREN R. TAYLOR.

January Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed February 5, 1907.

*Assumpsit for Taxes—Conclusiveness of Court's Findings—New Trial—Surprise.*

If a finding of facts can be supported upon any rational view of the evidence, it should stand.

Where defendant was sued for taxes assessed on the theory that he was a resident of Plymouth, but his evidence tended to show that he then resided in Woodstock, and the case was tried upon the issue whether he had moved to Woodstock, and the court did not decide that he was not a resident of Woodstock, nor that he was a resident of Sherburne, but found that he apparently resided there, which defendant denied, a new trial will be granted plaintiff on the ground of surprise, it appearing that, had the court not found an apparent residence in Sherburne, it would probably have found that defendant did not live in Woodstock, as he claimed, and there being no evidence of residence in any other town, evidence offered by plaintiff tending to show residence in Plymouth might have produced a decision in his favor.

ASSUMPSIT for the collection of taxes, begun by trustee process, under V. S. 506. Plea, the general issue. Trial by court at the June Term, 1905, Windsor County *Haselton,* J., presiding. Judgment for the defendant. The plaintiff excepted.

The court found as follows:

"The question is as to the tax of 1898. In making up the grand list of Plymouth on the first of April, 1898, the listers treated defendant as a resident of said town; as he had not given an inventory they put property into his list which they valued at $1,400.00, doubled the same and to the sum obtained by doubling, added the further sum of $10,000, claiming to act by virtue of section 424, V. S.

The question at the threshold of the case is—has the plaintiff by a fair balance of evidence established the residence of Warren R. Taylor in Plymouth on the 1st of April, 1898? The testimony of the town officials, taking direct and cross-examination together, seems to be largely matter of supposition, based upon their claim and understanding that he had always lived in that town; there was a place there that had always apparently been called the 'Taylor homestead,' but it does not appear that the title to that was in Warren R. Taylor. They testify in much the same way that they had seen him there from time to time with more or less frequency; just how close to the first of April no one says with definiteness. One of the selectmen of 1897-8, Mr. Pinney, was asked how long Mr. Taylor had lived at the Taylor homestead so-called, and replied: 'He always lived there, practically; I don't know but he lived a few years ago at Plymouth Union; that is in

the town of Plymouth.' In cross-examination he is asked: 'Did you not know that he was a tax-payer and resident of the town of Sherburne several years, and an office holder there?' and says that he did.

Now Taylor could not have been a tax-payer and resident of the town of Sherburne for several years and still be during those same years a resident of Plymouth.

On the other hand is testimony tending to show that Taylor was not a resident of Plymouth the 1st of April, 1898. Miss Stella Taylor, daughter of defendant, a woman of about 30, who had lived in Plymouth at the Taylor homestead, so that she was a person who ought to know, testified that her father had not lived there for a number of years before April, 1898. Her testimony and that of her brother, tends to show that Taylor was there occasionally, at the Taylor homestead, so-called, and he might have been seen there occasionally, but nobody testifies to having seen him there in control of things. He might well have been there visiting, having a son and daughter there, and living as he did in a neighboring town.

Whatever his motive for changing his residence from Plymouth to elsewhere, we think that before April, 1898, and probably for a considerable time before, he had ceased to reside in Plymouth. We are not called upon to decide whether he was a resident of Woodstock—apparently he was not. The testimony is not entirely clear about it, but apparently his residence was in Sherburne. It is enough for us to pass upon the question of whether his residence was in Plymouth. We find that he was not a resident of Plymouth on the 1st of April, 1898, and was not taxable in the town of Plymouth, on any personal property; that being so, as we understand it the listers were without jurisdiction to proceed as they did. With

this finding that the defendant was not a resident of the town of Plymouth, April, 1898, and not taxable in said town, judgment must be entered for defendant."

The plaintiff also brought a petition for a new trial, on the ground of surprise, to the Supreme Court for Windsor County at its January Term, 1907, which was then heard with the exceptions.

*William W. Stickney, John G. Sargent,* and *Homer L. Skeels* for the plaintiff.

The fact of residence and the intent to make the place of residence the home must concur to constitute a domicile. Phil. Dom. 11; Story Conf. Laws, §44; *Fulham v. Howe,* 62 Vt. 394.

The presumption of law is against a change of domicile. Jacobs Dom. §§114, 115; *Somerville v. Somerville,* 5 Ves. Jr. 750; *Bell v. Kennedy,* L. R. 1 Sch. App. 307; *Isham v. Gibson,* 1 Bradf. 89; *Jopp v. Wood,* 4 DeG. J. & S. 616; *Fulham v. Howe,* 62 Vt. 386; *Littlefield v. Brooks,* 50 Me. 475; *Gilman v. Gilman,* 52 Me. 165; *Hallet v. Bassett,* 100 Mass. 167; *Dupruy v. Wurtz,* 53 N. Y. 556.

*Davis & Davis* for the defendant.

When the right to tax a person in a particular town is a question, the burden is upon the town, claiming the right to prove that such person was legally set in the list and taxable in such town. *Hurlburt v. Green,* 41 Vt. 490; *Gregory v. Bugbee,* 42 Vt. 480; *Blood v. Sayre,* 17 Vt. 609; *Lyman v. Fiske,* 17 Pick. 231.

TYLER, J. The action is assumpsit, with trustee process for the collection of taxes; trial by the court; judgment for the defendant. The plaintiff excepted to the rendering of the judgment upon the facts found by the court, also to the findings of facts as being against the evidence. The findings and a transcript of the stenographic record of the trial are made part of the exceptions.

1. The first exception cannot be sustained for the court found and reported facts sufficient to support its judgment.

2. The plaintiff did not except upon the ground that there was no evidence to support the judgment, but upon the ground that it was "against the evidence," which was the equivalent of claiming that it was against the weight of evidence. This was not sufficient for there was evidence tending to support the defence, and the weight of the evidence was for the consideration of the court. The often stated rule is if the finding of facts can be supported upon any rational view of the evidence it should stand. *Weeks* v. *Barron,* 38 Vt. 420; *State* v. *Peach,* 70 Vt. 283, 40 Atl. 732.

*Judgment that there was no error in the trial; judgment reversed pro forma; petition sustained with costs; findings set aside; new trial granted; cause remanded.*

## PETITION FOR NEW TRIAL.

It must be conceded that the direct issue for the county court to try was whether or not the defendant resided in Plymouth and was legally taxable in that town on April 1, 1898. The plaintiff's evidence tended to show that at that time and for many years prior thereto that town was his place of residence. The defendant's evidence tended to show that on March 3, 1898, his wife went to Woodstock to take care of a Mrs. Wilder and remained with her until her death April 30

of that year, and then went to live with a Mrs. Hewitt in that town where she remained several months; that on March 30, 1898, the defendant carried a straw-bed, a table, a few old chairs and some boxes to Mrs. Wilder's and stored them in her chamber; that the defendant went to Mrs. Wilder's to visit his wife "a good many times" in April, frequently staying over night, but never occupying the room where his goods were stored nor using the goods while stored there. In support of the claim that the defendant changed his residence to Woodstock before April 1, and to show a continued residence in the latter town he introduced evidence to show that in November of that year he hired a room there of Mrs. Washburn, set up a stove in it and got some wood, though he never built a fire in the stove, and Mrs. Washburn did not know where he lived while his wife was at Mrs. Hewitt's.

The tendency of the testimony of the defendant's son and daughter was to show that their father and mother lived in Sherburne down to 1898, that their mother went to Woodstock early in March and that their father went there before April 1st. The daughter testified that she visited her mother at Mrs. Wilder's in April and saw this furniture there. This evidence was evidently introduced as tending to show that the defendant and his wife had taken up their residence in Woodstock before April 1, and that prior to that date they had lived in Sherburne. The testimony of these two witnesses was that their mother owned the Plymouth homestead, that the daughter owned the stock and household furniture and did the housework, and that the son carried on the farm and furnished the table.

The defendant stated to the listers that he had moved to Woodstock and should not be assessed for a poll in Plymouth.

His counsel say in their brief in the petition for a new trial that, "The claim that the residence of Warren R. Taylor was in Sherburne was not based on any testimony or assertions of counsel." Again they say that, "Warren R. Taylor's counsel was not claiming a residence in Sherburne, but in Woodstock." Again, "From 18— to 1896, inclusive, Warren R. Taylor had been a resident and taxpayer of Sherburne. It does not appear where his residence was in 1897 * * *."

We have referred to the transcript of testimony and to the present attitude of counsel to show that no claim was made that the defendant resided in Sherburne in April, 1898; on the contrary, the whole tendency of the defendant's evidence was to show that though he *had* lived in Sherburne several years, prior to April 1, he had moved to Woodstock. This was the only issue tried—whether the defendant had in fact, as he claimed, moved to Woodstock prior to April, 1898.

The following is the concluding paragraph in the finding of facts by the court below:

"Whatever his motive for changing his residence from Plymouth to elsewhere, we think that before April, 1898, and probably for a considerable time before, he had ceased to reside in Plymouth. We are not called upon to decide whether he was a resident of Woodstock—apparently he was not. The testimony is not entirely clear about it, but apparently his residence was in Sherburne. It is enough for us to pass upon the question whether his residence was in Plymouth. We find that he was not a resident of Plymouth on the 1st of April, 1898, and was not taxable in the town of Plymouth on any personal property; that being so, as we understand it, the listers were without jurisdiction to proceed as they did."

We are of the opinion that the court could not have decided as an isolated fact that the defendant was not a resident

of Plymouth at the date in question.   No claim was made that
he did not reside either in Plymouth or Woodstock.   While
the question was, as the court said, whether the plaintiff had
established the defendant's residence in Plymouth or not, the
case was tried, as the evidence shows, upon the issue whether
or not he had moved to Woodstock.   The court did not de-
cide that he was *not* a resident of Woodstock, nor that he *was*
a resident of Sherburne, but said that "apparently his resi-
dence was in Sherburne."   We think it could not have arrived
at the decision that his residence was not in Plymouth without
being influenced by what it termed was a probability that his
residence was in Sherburne.   In other words, if the court
had known, what now seems to be a conceded fact, that the
defendant had no residence in Sherburne, either in 1898 or
1897, its decision would most likely have been different.

The plaintiff was surprised by the judgment rendered and
by what we think must have influenced that judgment.   The
plaintiff had no occasion to introduce evidence that the de-
fendant had not a residence in Sherburne, for it was not
claimed.   If, during the trial, the defendant had claimed his
residence in Sherburne and the plaintiff was not prepared to
meet that issue, he should have moved for a continuance, but
the plaintiff was not surprised until the judgment was ren-
dered.   *Briggs* v. *Gleason,* 27 Vt. 114; *State* v. *White,* 70 Vt.
225, 39 Atl. 1085.

If there had been no evidence in the case about the de-
fendant's residence in Sherburne, we think, upon a careful
reading of the record, that the court would have found that
the defendant did not acquire a residence in Woodstock, as
he claimed before the listers.   Then, there being no evidence
of a residence in any other town, the testimony of the witnesses

produced by the plaintiff that the defendant was often seen at the Plymouth homestead and was apparently living there as other men live upon their farms, would very likely have produced a different decision by the court.

It was held in *Shellhouse* v. *Ball,* 29 Cal. 607, that the surprise must be conclusively shown, and, besides, it must appear that the fact or facts from which the surprise resulted had a material bearing upon the case, and that the verdict may be mainly attributed to their effect. This case falls clearly within these rules. Surprise is clearly established and it was without the plaintiff's fault. The case does not fall within the rule stated in *Wilson* v. *Blake,* 53 Vt. 305, for here, in the circumstances, the plaintiff had no other remedy than by a petition for a new trial.

Upon another trial the new evidence proposed would be likely to produce a different result.

*New trial granted.*