HAROLD O. TAYLOR *v.* RICHARD E. HENDERSON AND RAY SMITH.

May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

*Arthur N. McCloud* and *Finn and Monti* for defendant.

*Arthur L. Graves* and *Harold K. Davison* for plaintiff.

MOULTON, C. J. The plaintiff and defendant Henderson are adjoining land owners in the village of Wells River, and there is a driveway used in common between their respective properties. Defendant Smith is Henderson's tenant. The plaintiff brought a bill in equity alleging that the defendants were building upon and obstructing the driveway, and, upon a preliminary hearing, obtained a temporary injunction. The defendants then filed a cross bill in which they claimed that one of the plaintiff's buildings was partly upon the driveway and prayed for a mandatory order for its removal and for damages. Issue was joined in both proceedings, and after hearing, the Chancellor found the division line to be as claimed by the plaintiff. The temporary injunction was made permanent and the cross bill was dismissed. The defendants have appealed.

The facts found by the Chancellor are these: Defendant Henderson who was the owner of all the land and premises here in question, deeded to Medie J. Pudvah on September 22, 1914, a tract described as "Beginning at an iron pin driven in the ground on the easterly side of the highway leading from Wells River Village to Woodsville, N. H. at a point about sixteen (16) feet southerly from the Automobile Garage of said R. E. Henderson; thence southerly along the easterly side of said highway to the Wells River; thence down said River as it winds and turns to an iron pin driven into the ground near a small willow tree standing on the bank of said river; thence northerly about fifty-eight (58) feet to an iron pin driven into the ground near the corner of where the hen yard fence now stands; thence westerly to the place begun at * * *, excepting and reserving at all times four feet off the northerly end of the above described premises to be used in common as a driveway, by both of the parties hereto, and for no other purpose whatever." Through a series of mesne conveyances the title to this property vested in the plaintiff on February 24, 1938.

At the time of the deed to Pudvah the travelled highway, referred to therein, was in approximately the same position as at the time of the trial. In locating the corners of the land to be conveyed Henderson and Pudvah did not use compass directions and did not know where the actual edge of the highway was. They measured from the northwesterly corner of Henderson's garage, as it then stood, 16 feet to the southerly travelled edge of the highway to a point marked B on a map introduced in evidence as plaintiffs' Exhibit 7-A, which point was on the line of a cement sidewalk, which ended beyond the premises, as it would be if extended; they then walked toward the Connecticut River (a direction shown by the map to be southeasterly) a distance of 107 feet, and drove an iron pipe or pin at or very near this point; marked A on the map; after which they turned and proceeded in a southwesterly direction (again, as shown by the map) 58 feet to a small willow tree standing on the bank of the Wells River, near which they drove another iron pipe or pin. The flood of 1927 covered the entire tract and washed away the willow tree and ten to twelve feet of the bank where it stood. Not one of the corner pipes or pins can now be found. An iron pipe was found at

point A, but the Chancellor says that he is unable to find that this pipe (produced at the trial as plaintiffs' Exhibit 11) is the one driven by Henderson and Pudvah, although he does find that the original pipe or pin was driven by them at or very near the point at which this pipe was found. The boundary between the respective premises of the parties is found to be the line commencing at point B in the travelled edge of the highway and extending 107 feet to point A. The construction started by the defendants extends over this line and encroaches upon the driveway. A small portion of the roof and eaves of one of the plaintiff's buildings projects over the driveway, but does not interfere with its use.

It is to be noted that in speaking of the edge of the highway the terms "easterly" and "southerly" appear to have been used indiscriminately by the parties and the Chancellor to designate the same thing. The highway, as it passes the premises in dispute, follows a general northeasterly direction from Wells River Village toward Woodsville, and so probably it would be more accurate to refer to the southeasterly, rather than the easterly or southerly, edge. But the meaning is plain enough and no confusion need result.

The defendants have briefed twenty-five exceptions. The first eight are to the rulings upon questions of evidence, the next twelve are to the findings as made, and the last five are to the refusal to find as requested. It is convenient to depart from this order and to consider the exceptions to the findings and to the refusals to find before giving attention to the questions of evidence.

Where findings are challenged upon the ground that they are without evidentiary support, they must stand if there is any legitimate evidence fairly and reasonably tending to support them. *White River Chair Co.* v. *Conn. River Power Co.,* 105 Vt. 24, 35, 162 Atl. 859; *Levin* v. *Rouille,* 110 Vt. 126, 128, 2 Atl. 2d. 196; *Village of St. Johnsbury* v. *Cenedalla,* 109 Vt. 174, 181, 194 Atl. 382. The weight of the evidence and the credibility of the witnesses are for the trier of facts to determine, and all conflicts must be resolved against the excepting party. *Putnam* v. *Woodard,* 111 Vt. 39, 41, 43, 10 Atl. 2d. 186; *Utley* v. *School District,* 110 Vt. 522, 526, 9 Atl. 2d. 117. And an exception to the refusal to find a fact as requested cannot be sustained where there is evidence fairly and reasonably tending to show the contrary. *Rugg*

v. *Degnan,* 96 Vt. 175, 178, 118 Atl. 588; *Town of Bennington* v. *Fillmore and Slade,* 98 Vt. 405, 418, 419, 130 Atl. 137.

EXCEPTIONS TO FINDINGS OF FACT.

■ ■ Exceptions 9 and 10 were taken to the finding that Henderson and Pudvah measured 16 feet from the corner of the former's garage and drove a pin at the point marked "B" on the plaintiff's map, Exhibit 7-A. Since both exceptions present the same question, they will be considered together. It is contended that the undisputed evidence is as Henderson testified that he measured 16 feet in a course at a right angle from the side of his garage, which would be parallel to the southerly side of the highway, and then went northerly to the edge of the dirt sidewalk, then in the highway, where the pin was placed. But he also testified that the pin was driven at the end of the 16 feet, and that this point was very near the sidewalk. Pudvah testified that the pin was placed 16 feet from the corner of the garage, on the side of the road, "not exactly on the roadbed" but "where the travel went back and forth, what we called the edge of the highway." Another witness testified to the position of the pin as being "right next to the sidewalk." This evidence is enough to support the finding that the pin was driven at the point "B" on the plaintiff's map.

By exception No. 11 it is claimed that there was no evidence to support the finding that Henderson and Pudvah walked from point "B" towards the Connecticut River to a point at or very near point "A" and drove an iron pipe or pin to mark the corner; then turned and walked toward the Wells River, in a line nearly parallel to the end of the building that is now the plaintiff's garage, and drove an iron pipe or pin near a small willow tree on the bank of the Wells River, 58 feet from point "A". This finding is in accord with testimony of Pudvah. It is contended, however, that the finding is opposed to the description in the deed, which begins at "an iron pin driven in the ground on the easterly side of the highway," which, according to the argument, means that the pin must be found to have been placed on the edge of the highway as legally surveyed and established, and not merely at the side of the travelled road. But the defendants lose sight of the fact that it is the location of the pin and not

the edge of the legally constituted highway that is controlling. Neither party knew at the time where the actual boundary of the highway was situated, and it is to be presumed that the edge of the road as actually used was meant. *Falls Village Power Co.* v. *Tibbetts,* 31 Conn. 165, 167; *Sproul* v. *Foye,* 55 Me. 162, 164; and see *Wead* v. *St. J. & L. C. R. R. Co.,* 64 Vt. 52, 58, 24 Atl. 361. The phrase ''on the easterly side of the highway'' is no more than a general designation of the place of the monument, which place, being found, determines the point of the beginning of the description. *Parrow et al.* v. *Proulx,* 111 Vt. 274, 15 Atl. 2d. 835.

The argument that the deed shows conclusively that the parties did not proceed from the pin at point ''B'' to the place where they drove the pin at point ''A'', but that they went along the highway to the Wells River, thence to the willow tree on its bank is based upon the fact that the description gives the courses and distances in a different order than that which Pudvah's testimony tends to show was followed by the parties in placing the corner monuments, and is too trivial to require consideration.

It is also argued that the evidence shows that the division line was twelve feet distant from a certain building on Pudvah's property, and this, it is said, places the line where the defendants claim it is. But Pudvah's testimony was that ''he figured that'' his building was so far from the driveway, not the division line. And there was other evidence from which the Chancellor was justified in finding the location of the two pins which marked the termini of the division line, and, consequently, the location of the line itself.

The finding that the flood of 1927 washed away the willow tree and 10 to 12 feet of land on the bank of the Wells River where the tree stood is attacked by the twelfth exception. The grounds of the exception are that there was no evidence to support the finding and that the evidence fairly showed that the bank was washed away to a greater extent. But there is support for the finding in Pudvah's testimony, and the fact that other evidence is in conflict with it cannot avail the defendants.

The thirteenth exception is to the finding that Henderson and Pudvah drove a pipe or pin to mark the corner at or very near the point marked ''A'' on plaintiff's map, Exhibit 7-A. The ground is that ''the evidence is insufficient to warrant * * * this

finding.'' Since a bill of exceptions is to be construed strictly, although, of course, reasonably, against the excepting party (*Dunbar* v. *Godbout*, 105 Vt. 448, 452, 168 Atl. 551), we take this to mean that there was some evidence to support the finding, but not enough, and to be the equivalent of saying that the finding is against the weight of the evidence. As we have seen, this is for the trier to determine. If the finding can be supported on any rational view of the evidence it must stand. *Coolidge* v. *Taylor*, 79 Vt. 528, 532, 65 Atl. 582. It appeared that the pipe, plaintiff's Exhibit 11, was dug up at the point marked ''A'', and the place was carefully marked by two other pieces of iron when the pipe was removed; Pudvah testified that he was shown these markers and identified the spot as being at or very near the location of the original pin. There was evidence that this spot was within the limits of the former hen yard, wherein both Henderson and Pudvah agreed that the pin had been driven, and that the digging was done by Henderson's employes for the purpose of finding the pin, and when the pipe was unearthed, Henderson said to Taylor, who was present, ''Here is your pipe,'' and that he was glad the latter was there, so that there would be no dispute about it. This evidence amply suffices to support the finding.

Exceptions Nos. 14, 15, 16 and 17 relate to the finding just considered. The grounds are that there was evidence tending to show the contrary which the Chancellor must have ignored. We spend no time in reciting the evidence, or the somewhat intricate arguments based upon it, because to do so would prolong this opinion to a most unreasonable extent. We must assume, the contrary not appearing, that the Chancellor considered all the evidence bearing upon the issue, with impartial patience and adequate reflection. *Putnam* v. *Woodard*, 111 Vt. 39, 43, 10 Atl. 2d. 186, and cases cited; *Carr* v. *Carr*, 100 Vt. 65, 70, 135 Atl. 5. It is enough to say that the testimony mentioned in dealing with the 13th exception is an adequate answer to the defendant's claims.

As the defendants state in their brief, exception No. 17 raises the same question that is involved in several of those already considered. For this reason it does not require separate treatment.

Under exception No. 18 the defendants argue that the evidence is insufficient to support the finding that the point ''B''

on plaintiff's Exhibit 7-A "is located on the line of the southerly edge of the cement sidewalk as extended easterly from the Butson place." This sidewalk, which was not in existence when Henderson deeded to Pudvah, now ends a short distance beyond the premises in dispute. It is argued that, according to plaintiff's Exhibit 7-A, it appears that the point B is about one foot south of the line of the sidewalk as extended, and not exactly upon such line. But a surveyor called by the plaintiff testified that it was practically in line·with the sidewalk. Findings, although doubtful, must be read so as to support the decree, if this can reasonably be done. *Gardner* v. *Gauthier,* 101 Vt. 147, 149, 141 Atl. 682; *Reed* v. *Hendee,* 100 Vt. 351, 354, 137 Atl. 329. So we take it that the Chancellor did not mean an exact coincidence of the pin and the line. No error is made to appear.

Exception No. 19 is based upon the assumption that the easterly edge of the highway, as mentioned in the deed of the premises, means, as a matter of law, the edge of the highway as laid out by public authority. This claim is disposed of by what we have said in considering the eleventh exception, and requires no further attention.

██ Exception No. 20 was taken to the finding that the small projecting portion of the roof and eaves of one of plaintiff's buildings does not interfere with defendant Henderson's use of the right of way. This is claimed to be without supporting evidence. The finding was in response to an allegation in the defendant's cross bill to the effect that the buildings encroached upon the right of way, and, of course, the burden of showing an interference with the use of it by the defendants was upon them. The evidence of such interference to which the defendants refer us is a photograph, from which the heights of the buildings and automobiles shown thereon are estimated. The Chancellor viewed the premises, and, it must be assumed, had all the material features pointed out to him. From what appears in the record it cannot be said that the finding was unjustified.

### EXCEPTIONS TO FAILURES TO FIND AS REQUESTED.

The twenty-first exception was taken to the failure of the Chancellor to find, as requested, that the southerly edge of the highway in front of the premises in dispute is as laid out by a

survey introduced in evidence as defendant's Exhibit Z, and as marked in pencil upon other exhibits. Neither this exhibit, nor a certified copy of it, has been furnished us. The point of the exception is that the side of the highway, referred to in the deed from Henderson to Pudvah, must, as a matter of law, be taken to mean the edge as established of record. This issue has already been dealt with and what has been said in regard to the eleventh exception need not be repeated.

The defendants requested a finding that the building, the eaves of which projected over the driveway, was placed there in pursuance to a ten year lease, dated about June 1, 1928, between Henderson and Prescott, who then owned and occupied the premises now held by the plaintiff. To the refusal to grant this request the twenty-second exception was taken. Henderson testified that Prescott told him that the building which he had erected covered the driveway and a few inches beyond, and it was arranged that, in consideration of the cancellation of a debt owing from Henderson to Prescott the building might remain there for ten years. Prescott's whereabouts was unknown, so he was not called as a witness. This testimony was evidence tending to show an admission by the plaintiff's predecessor in title made during the time of his ownership, and, as such, was receivable in the defendant's favor. *Waterman* v. *Moody and Rogers*, 92 Vt. 218, 231, 103 Atl. 325; *Pope* v. *Hogan*, 92 Vt. 250, 256, 102 Atl. 937; *Weinberg* v. *Roberts*, 99 Vt. 249, 254, 131 Atl. 14; and see *Johnson* v. *Tuttle*, 108 Vt. 291, 295, 187 Atl. 515, 106 A. L. R. 1291. But, although not directly denied, the Chancellor was not obliged to accept it as conclusive, (see *Wiley* v. *Rutland R. R. Co.*, 86 Vt. 504, 508, 86 Atl. 808) or to belive it, in all circumstances. *Miller* v. *Miller*, 89 Vt. 547, 549, 95 Atl. 928. There was evidence tending to show that the limits of the driveway were not clearly defined, since the travelled tract appeared to be just the width of a wagon and vehicles were driven between the two properties, as one witness put it, ''most any which way.'' We may assume that the Chancellor found that Henderson's testimony was not sufficient to overcome the evidence of the location of the pins between which the division line extended. Having found this line, which was the ultimate fact in issue, error does not appear in the failure to state the effect given to subordinate facts or to report the evidence. *Trask* v. *Walker's Estate*, 100 Vt. 51, 65, 134 Atl.

853; *Village of St. Johnsbury* v. *Cenedalla,* 109 Vt. 174, 182, 194 Atl. 382.

As the defendants admit, exception No. 23 raises questions involved in other exceptions which have been considered.

■ Exception No. 24 is to the refusal to find in accordance with a request, that the "southerly or rear line of the Taylor premises (that is, the line from the pin placed in the hen yard to the pin placed near the willow tree on the bank of the Wells River) forms a right angle with the easterly line of said premises, (that is the line from the pin placed on the side of the highway to the pin placed in the hen yard)." The defendants argue that the angle as shown on plaintiff's Exhibit 7-A is obtuse and gives the plaintiff more frontage on the Wells River than he is entitled to. But no issue as to this "southerly or rear line" is made by the bill or cross bill. The complaint of each party is that the other has encroached upon the "easterly line." So this request is immaterial to the present controversy, and the exception is unavailing. *Phillips* v. *Plastridge,* 107 Vt. 267, 271, 179 Atl. 157, 99 A. L. R. 1074; *Crampton* v. *Lamonda,* 95 Vt. 160, 164, 114 Atl. 42. And indeed, on the evidence the requested finding was not required. No instruments were used in running the lines. Henderson said it was a right angle, but Pudvah testified that although the corner was as square as they could make it, the line from the hen yard pin to the willow tree pin was parallel with the back of one of the buildings on the land deeded to him. This is in accord with the map, Exhibit 7-A.

The twenty-fifth exception presents no new question. It appears to be based upon the proposition that the edge of the highway must be taken to be the edge as legally surveyed and located and that the undisputed evidence shows that the division line was twelve feet distant from the building as it was when Pudvah was in possession and that the point where the pin was driven to mark the place of beginning was not where the Chancellor found it to be. All these contentions have been considered, with a result adverse to the defendant's claims.

## EXCEPTIONS TO EVIDENCE.

■■ The first exception was taken to the exclusion of a question put to the defendant Henderson on direct examination.

He was asked whether he had some understanding concerning the location of the side of the highway in front of his garage at the time of the deed to Pudvah. The offer was to show that he understood it to be close to the edge of his buildings, but how close was not stated. It is argued that his understanding was material as tending to support his testimony concerning the place where the first iron pin was placed. But no such claim was made below. The evidentiary relation between the fact covered by the offer and the issue being tried was not pointed out. *State* v. *Maguire,* 100 Vt. 476, 484, 138 Atl. 741; *Hambleton* v. *Aja Granite Co.,* 96 Vt. 199, 207, 118 Atl. 878. To be available an offer must be specific enough to make the relevancy of the offered evidence apparent to the trial court, and the construction of the record on review is always against the excepting party. *Conn Boston Co.* v. *Griswold,* 104 Vt. 89, 96, 157 Atl. 57. No error can be predicated upon the ruling.

The second exception is to the exclusion of this question also put to Henderson on direct examination: "When you used that language (in the deed to Pudvah) 'on the easterly side of the highway leading from Wells River to Woodsville, New Hampshire,' what were you referring to?" The offer was to show that it was the easterly side of the highway as he understood it and along the edge of the sidewalk. He had previously testified without objection that the pin was placed on the easterly edge of the sidewalk as it then was, which was a dirt walk. Under these circumstances it would appear that the defendants had the substantial benefit of the excluded testimony, and for this reason, if for no other, no prejudicial error is made to appear.

The third exception challenges the admission in evidence of the iron pipe (Plaintiff's Exhibit 11) which was discovered at the point marked A on Plaintiff's Exhibit 7-A. The plaintiff claimed it to be the pipe placed there by Henderson and Pudvah and referred to in the deed between them as marking one of the corners of the property conveyed. The defendant's objection was that it had not been properly identified as such. But since the Chancellor refused to find that this exhibit was the original monument, we do not perceive that the defendants have been harmed by its admission.

The plaintiff's evidence tended to show that the iron

pipe (plaintiff's Exhibit 11) was dug up, within the limits of the former hen yard, in the presence of Henderson and the plaintiff. In testifying to the occurrence the plaintiff was asked whether Henderson then claimed that the pipe was not found at the place where one of the corners was, and answered "He didn't make any claim that it wasn't." The fourth exception is to the refusal of the Chancellor to strike this answer from the record. The ground for the motion to strike was that the answer was merely a conclusion and not a statement of fact. However this may be, the testimony was of such a slight and inconclusive character that it does not affirmatively appear that, if there was error in the ruling, the defendants were harmed thereby. The burden of showing prejudice is upon the excepting party. *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 296, 143 Atl. 394; *In re Moxley's Will,* 103 Vt. 100, 115, 152 Atl. 713.

A surveyor, called as a witness by the defendants, was shown a map, purporting to represent the premises in dispute, and was asked on direct examination whether he had heard anything said to the effect that a portion of the highway, marked by dotted lines, had always been there. The question was excluded, subject to the fifth exception. It was then offered to show that old settlers of the town, now dead, had stated that the highway did not run in that area. The defendants argue that the offered testimony was admissible being declarations as to boundaries by persons deceased, who appeared to have had means of knowledge and no interest in making the statements. See *Wood* v. *Willard,* 37 Vt. 377, 389, 86 Am. Dec. 716; *Powers* v. *Silsby and Smith,* 41 Vt. 288, 290; *Child* v. *Kingsbury,* 46 Vt. 47, 54; *Hadley* v. *Howe,* 46 Vt. 142, 143; *Turner Falls Lumber Co.* v. *Burns,* 71 Vt. 354, 356, 45 Atl. 896. But we need not consider whether this rule is applicable, because the offer did not indicate that the testimony would relate to any time material to the issue, and so was not sufficiently explicit. Hence, the exception is unavailing. *Conn Boston Co.* v. *Griswold, supra.*

Exception No. 6 was taken to the exclusion of a map marked Defendant's A. This was a blue print reproduction of a map made in 1914 for the purpose of representing the location of the tracks of the Montpelier and Wells River Railroad at and near the Wells River Station and certain other railroad properties,

and purported to show the Wells River and its junction with the Connecticut River, and was claimed to be admissible as showing the location and width of the channel of the Wells River as it was before the flood of 1927. It was produced by the witness Frank Sawyer, a civil engineer, who, while in railroad employ, had used the map in surveying and checking the railroad tracks. He was not the person who made the original survey and map, but testified to its accuracy so far as the railroad property as it then existed. He also testified, on direct examination, that in his opinion it correctly showed the width of the Wells River at that time. But on cross examination he said that he had never measured the width of the river and compared it with the width shown on the plan; that he had never taken a compass bearing of the course of the stream, and followed it with the map; that his knowledge, as gained from his own survey was limited to the railroad property; that he did not know from any measurements he had made that the course of the stream was accurately represented; that he was relying upon what he had observed while crossing the railroad bridge and on fishing trips; that he could not tell whether the map was accurate within 10 feet as to the width of the river; and that he had no knowledge of any accurate survey of the course of the river except as shown on the plan.

■■ Maps and plans are admissible as independent evidence only when properly verified, but the sufficiency of the verification is a preliminary question of fact to be determined by the court, and is not, ordinarily, reviewable because it is largely a discretionary matter. *Hassam* v. *Safford Lumber Co.*, 82 Vt. 444, 449, 74 Atl. 197; *Leland* v. *Leonard*, 95 Vt. 36, 38, 112 Atl. 198; *Massari* v. *Bolognani*, 104 Vt. 474, 477, 162 Atl. 364. This is the rule when the trial is by jury and there is no reason why it is not equally applicable when the trial is by the court. The exclusion of the map in this instance was an implied ruling that the portion of it that purported to represent the features which were material to the issue was not shown to be sufficiently accurate to warrant its consideration as evidence. In view of the testimony of the witness on his cross examination, it cannot be said that in this there was an abuse of discretion, and no error appears.

The seventh exception presents the same question as the one we have just considered. It was taken to the exclusion of another

map, Defendant's C, which purported to represent the same locality as the previous map. The same witness testified with regard to it, and his answers upon cross examination were to the same general effect as in the previous instance. For reasons already given, no error is shown.

And, indeed, it is difficult to see how the defendants have been harmed by the two foregoing rulings, because still another map drawn by Mr. Sawyer from a survey made by him was received in evidence. It was on a much larger scale than the excluded maps, and the channel of the Wells River as it was before and after the flood of 1927 was marked thereon.

██ The defendant Henderson testified that in 1914, before the deed to Pudvah, he had a conversation with a Mr. Pope, "the road man," since deceased, who pointed out to him "where the line of the road ran." He was then asked, "Where was the line of the highway as pointed out by him with respect to the front of your garage building?" The question was excluded, subject to the eighth exception. The testimony was offered as bearing upon Henderson's understanding of the line, as it then was, there being no plans available to show its exact location. The ruling was without error, because the offer did not indicate the expected answer, so that the Chancellor could determine its relevancy. *Residents of Royalton* v. *C. V. Ry. Co.*, 100 Vt. 443, 449, 138 Atl. 782; *Shields et al.* v. *Vt. Mutual Fire Ins. Co.*, 102 Vt. 224, 247, 147 Atl. 352.

It was offered to show, in connection with the excluded question, and as a reason for admitting it, that there were no plans available which gave the exact location of the highway; but later on the survey, defendant's Exhibit Z, was introduced, so the defendants had the advantage of the best evidence on this point.

We have considered all the questions raised on the trial, and have found no reason for disturbing the result.

*Decree affirmed.*