SCOTT'S EXR. *v.* BELAND

January Term, 1946.

Present: MOULTON, C. J., SHERBURNE, STURTEVANT, JEFFORDS, JJ. and CLEARY, Supr. J.

Opinion filed February 5, 1946.

384

*Lee E. Emerson* for the plaintiff.

*Hubert S. Pierce* for the defendant.

SHERBURNE, J.   Arthur F. Scott died on October 2, 1943, in his 81st year, leaving a will which has been duly allowed, and a substantial estate, a part of which is a tenement building with a first floor apartment at 107 Main Street in Newport, and second and third floor apartments at 109 Main Street.   The will gives the use and income of the real estate to his daughter Mabel, during her lifetime, and appoints his executor, Charles Scott, trustee to hold the real estate during such time, and to pay the taxes, repairs and insurance expense thereon from the income of the personal property.   After the death of Mabel the real estate is given to his nephews Charles Scott and Fred Scott.   The defendant lived in the apartment at 107 from 1927 to the fall of 1938, when she moved to Claremont and later to Manchester, New Hampshire, returning to 107 in April, 1941.   Around 1927 defendant's son, Oliver, married Mabel, and after their marriage they lived on the third floor at 109 for a few years.   Arthur Scott, the testator, and his wife lived on the second floor at 109 until her decease early in 1933.   Soon after his wife's death the defendant did some work for him, and he began to take his meals with her in October, 1933, for which he paid $5.00 per week, and he continued to take his meals with her in whole or in part until she moved away.   In addition to the $5.00 per week he gave her considerable sums of money each year during this period.   After she moved to Claremont he made several trips to see her, and on some of these visits he took her with him in his automobile to visit his daughter and defendant's son, who were then living in Boston.   On many of these occasions he purchased a supply of food for the defendant, if the visit was at Claremont, and for the defendant, his daughter and her husband, if the trip was to Boston.   During the winter of 1939 and 1940 he boarded for a few weeks with the defendant at Claremont, and during that time paid for his room and furnished the groceries for himself and the defendant.   After the defendant

moved to Manchester in the spring or early summer of 1940 he made several trips there to see her, and on three of these occasions went on to Boston to visit his daughter and her husband, and the defendant went with him on each occasion. In November, 1940, he went to Manchester and boarded with the defendant until about April 1, 1941. About the middle of April, 1941, the defendant returned to Newport to live at 107 Main Street. Mr. Scott hired and paid E. H. Reece, a truckman, to move defendant's goods from Manchester to Newport on this occasion. After her return she took care of him, assisted him in looking after his tenements and collecting the rents, prepared his meals, and acted as nurse for him when he was ill until his death. After his decease his daughter Mabel divorced Oliver Beland, and she has remarried and now has the name of Wrench.

Because after the death of Mr. Scott the defendant claimed, among other things, that when she returned in April, 1941, it was under an agreement with him that, if she would do so and take care of him, she should have the life use of the apartment at 107 rent free and heated, and refused to vacate, these proceedings were brought to remove a cloud upon the title. The plaintiff alleges that on April 6, 1941, Arthur Scott and the defendant executed a writing with reference to the apartment at 107, which is Deft's Ex. C hereinafter set forth, and that he has been directed by Mr. Scott's daughter Mabel to recover possession of the apartment from the defendant, and that she refuses to vacate. Defendant filed an answer and cross-bill. Later during the trial she filed a motion that the plaintiff individually and as trustee, Mabel Beland Wrench and Fred E. Scott be made parties plaintiff, and that the court issue a citation to have them appear and show cause why the prayer of the cross-bill should not be granted. The motion was granted subject to the exception of this plaintiff. These new parties under the terms of the will were interested presently or ultimately in the property and were properly made parties in order to conclude their rights by the decree. Patch v. Squires, 105 Vt 405, 412, and cases cited. This exception is not sustained.

In order to present the factual situation and to clearly discuss the plaintiff's exceptions it is necessary to quote many of the find-

ings. We will first set forth all the findings involved, and later take up the exceptions to each.

"19. The deceased, Arthur Scott, told a lifelong friend who lived in one of his tenements that 'he wanted her (Delia Beland) to make a home for him the rest of his life and that he wanted to fix it so that she would have a home for the rest of her life', and he also told her that 'he was settling $1500.00 in money on her and he said the papers were made out'. He also said 'he had no one else that he could depend on to take care of him in his last days'. At another time he told this same friend that 'he was making out a paper so there would be no trouble but what Mrs. Beland would get the rent as long as she lived and also the money, the $1500.00'.

"20. During the period when the defendant was living in Claremont, New Hampshire, the deceased, Arthur Scott, asked one Leonard Rossier to accompany him in his automobile to Claremont on a trip and as he approached the home of the Defendant in Claremont he stopped and purchased a lot of groceries and a chicken and remarked to his friend Rossier that he felt he couldn't do enough for Mrs. Beland because she had done so much for him and he felt greatly indebted to her. That on this trip the deceased, Arthur Scott, told his friend, Rossier, that he was in hopes to get the Defendant to return to Newport and take care of him the balance of his life, saying also that no one could give him as good care as she could and that she was a good housekeeper and a good cook, took care of his clothes, kept them mended and washed, and also a good nurse and very good to help him about his books and collecting rents.

"21. That while Defendant was living at Manchester, New Hampshire, the Defendant's son, Oliver Beland, had a talk with the deceased, Mr. Scott, in which the deceased said, 'I have been trying to

persuade your mother to come back to Newport and take care of me. She is all alone here in a big rent, very costly to heat; she is all alone to cook for herself, and I am also alone at home and she can come and take care of me and have a nice warm home, comfortable, and plenty to eat and it won't cost her one cent.'

"22. That on another occasion when the deceased, Arthur Scott's son-in-law, Oliver Beland, was visiting him at Newport after the defendant had returned from Manchester, New Hampshire, to Newport and to the tenement at 107 Main Street, where the deceased lived with her until his death, the deceased, Arthur Scott, told his son-in-law 'I want your mother to have a home here at 107 as long as she lives, she has taken care of me, I don't know what I could do without her. You be good to your mother, she has taken good care of me'.

"18. That there was produced in evidence a few of the deceased's, Arthur Scott's, letters to the defendant, which were admitted and marked Deft's. A, B, G, H, I, J and K. The deceased's letter of March 1, 1939, states that he was sending the children $17.00 a week until business picked up, and further stated 'I wish you were here where you had no rent to pay and I could get everything you need to eat and stop that worry for you'. In a letter dated August 1, 1940, the deceased, Arthur Scott, wrote to the Defendant in part, 'I wish you were here and I would call you sweetheart'. In a letter dated September 26, 1940, the deceased, Arthur Scott, wrote to the Defendant 'Come back where I can take care of you and live the rest of your days and pay no rent. I have a good warm home and all you could wish. I have a good income and I would like to share with you'. In another letter not dated which is a part of Deft's. Ex. B, the deceased, Arthur Scott, wrote 'Would you move back if I would pay for the truck and pay myself and give you a

good home as long as you live and everything paid for and stop worrying and have a good home and be sure of it and know I mean business. If you get short let me know and I mean it. A man will do anything for any person he likes as much as himself'. In a letter dated August 6, 1940, the deceased, Arthur Scott, wrote about coming to see the Defendant and further wrote 'We will plan for next winter and money when I come. Don't worry when you have a true friend'. In a letter dated November 3rd the deceased, Arthur Scott, stated that he would leave Newport on the Saturday night train arriving there Sunday morning and further wrote 'Vote for Wilkey and the sun will shine all the time and the birds will sing and we will have all we can eat this winter'. In a letter dated April 10, 1941, the deceased, Arthur Scott, wrote the Defendant about E. H. Reece coming for her goods.

"23. That while the deceased, Arthur Scott, was boarding with the Defendant at Manchester, New Hampshire, during the winter of 1940 and '41, arrangements were made for the Defendant to move back to her old tenement in the deceased's, Arthur Scott's, block at 107 and 109 Main Street, and occupy her old tenement at 107 Main Street. That on April 6, 1941, the deceased, Arthur Scott, at Manchester, New Hampshire, wrote out a contract which was later signed by himself and the Defendant in the presence of John Hamer at Newport, Vermont, which contract is Deft's Ex. C and is in words and figures as follows:

'April 6. 1941
Manchester, N. H.

I A. F. Scott is giving Mrs. Delia Beland the Rent Free in 107 as long as she lives. I A. F. Scott is to Board & Room with Mrs. Beland & Scott Buys His food.

A. F. Scott

| Witness | Delia Beland |
| Witness | John Hamer' |

"24. At about the middle of April, 1941, the Defendant moved from Manchester, New Hampshire, to the tenement at 107 Main Street, Newport, Vermont, owned by the deceased, Arthur Scott, and from that time until his death on October 2, 1943, she took care of the deceased, Arthur Scott, assisted him in looking after his tenements and collecting the rents, prepared his meals, kept the home clean and in attractive condition, that she acted as a nurse for him when he was ill, without receiving any wages for her services except the promise of the deceased that she was to have the tenement she was then occupying at 107 Main Street, Newport, Vermont, rent free and heated as long as she lived.

"25. That during the years that the Defendant rented said apartment at No. 107 Main Street of the deceased, Arthur Scott, before she moved to Claremont, and during the years that she lived in said apartment caring for the deceased, Arthur Scott, from April, 1941, to his death on October 2, 1943, said apartment was heated by a central heating system in said building by the deceased, Arthur Scott.

"26. That there was a room in the basement of said block which was used as an exclusive cellar for the apartment at No. 107 Main Street during the time that the Defendant used said apartment previous to the death of said Arthur Scott.

"27. That since the decease of said Arthur Scott and the appointment of the Plaintiff as Executor of his will, the Plaintiff, upon his own initiative or upon the request of the daughter of the deceased, Mabel Wrench, has interfered with the Defendant's use of said room in the basement of said block and has refused to heat said apartment for the Defendant; that he has allowed the heating system that furnishes heat to the tenement directly over the Defendant's tenement at No. 107 Main Street to get in disrepair so that when the heating plant is run under pressure in cold weather the water from the

same leaks down upon the wallpaper and curtains of the Defendant in the tenement at No. 107 Main Street.

"28. That the plaintiff, Charles Scott, has interfered with the Defendant's use and occupation of said apartment at No. 107 Main Street by taking a screen door from that apartment and placing it on some other property; that he continues to use electricity for the basement of said building which electric line is connected with the Defendant's meter so that the Defendant has to pay for lighting the entire cellar of said building, which the plaintiff, Charles Scott, uses at times as a repair shop and so consumes a substantial amount of electricity that the Defendant has to pay for.

"45. That the Court has considered the requests of the plaintiff numbered 10, 11, 12 and 13, and the Court is unable to find that the defendant and the deceased, Arthur Scott, occupied the same room at Newton, Massachusetts, in the summer of 1940, or that they occupied the same bed together in the tenement at Newport or that it was contemplated that Scott was to occupy the same bed with Mrs. Beland when she agreed to come back to Newport and care for him, and the Court is also unable to find any of the facts requested in the above considered requests.

"46. Defendant's Ex. C was signed by the deceased, Arthur Scott, at Newport, Vermont, and witnessed by one John Hamer at Newport, but it was evidently drawn up at Manchester, New Hampshire, while the deceased, Arthur Scott, was rooming at the apartment of Delia Beland at Manchester, and was undoubtedly shown to the defendant at Manchester, and relied upon by her in moving back to Newport, Vermont.

"47. That there was an agreement between the deceased, Arthur Scott, and the defendant in April, 1941, whereby the deceased promised if the defendant would come back to Newport and take care of

him, he would pay for moving her goods back to Newport, pay all their living expenses, and would give her as long as she lived, rent free and heated, apartment No. 107 Main Street, Newport, Vermont.

"48. That this agreement was faithfully performed by both the defendant and the deceased until his death on October 2, 1943.

"49. That the arrangement which was entered into between the deceased, Arthur Scott, and the defendant, Delia Beland, whereby the defendant moved from Manchester, New Hampshire, in April, 1941, to the deceased's tenement at 107 Main Street, Newport, Vermont, which the defendant is now occupying, was for a good and valid consideration, and was not made in contemplation of any illicit relationship between said parties, and the defendant has fully performed her part of the contract entered into between the deceased, Arthur Scott, and the defendant, Delia Beland.

"50. The Chancellor finds that the defendant, Delia Beland, is entitled to the use and occupancy rent free of the tenement she is now living in at 107 Main Street, Newport City, as long as she lives, and that the tenement at 107 includes the room in the basement that she previously had used for storeroom purposes; that she is also entitled to have said tenement at 107 heated the same as it had been previously; that the plaintiffs should repair the heating system so that the water will not leak down upon the wallpaper and curtains in the defendant's tenement at 107, and that the plaintiffs should fix the lights in the basement of said cellar so that the defendant will not have to pay for electricity used by the plaintiffs or other parties."

■ Exceptions have been briefed to all of the above findings, except 26 and 27. Plaintiff excepted to finding 19, because based upon the wrongful admission of evidence and incompetent evidence, and because the statements were never communicated to or

acted upon by the defendant, and were hence immaterial. The only exceptions that are briefed to the admission of the statements set forth in the finding apply to the statements in the first half thereof. The objection was merely that they were immaterial and irrelevant. The evidence was admissible. The statements tend to support the agreement which the defendant claims to have been made. *Comstock's Admr.* v. *Jacobs,* 86 Vt 182, 186, 84 A 568. The plaintiff has briefed an exception to the admission of the testimony of the same witness to another statement made by Mr. Scott as follows: "Well he said he intended to settle the tenement on her for life." Before its admission he objected on the ground that it had no probative force on any issue in the case. After the witness had answered he moved to strike because it only evidenced an intent as to a future testamentary disposition. A testamentary disposition is one which does not take effect unless or until the donor dies. If the maker intends to transfer a present interest, the instrument is not testamentary in character. *Patch* v. *Squires,* 105 Vt 405, 412, 165 A 919. The statement is consistent with the making of the claimed agreement, the intent to give a present interest, and tends to support it. The only exceptions to the finding that we need consider are to the points saved to the admission of evidence. The exceptions to the finding and to the admission of evidence are not sustained.

Finding 20 is excepted to upon grounds similar to finding 19. The plaintiff excepted to the admission of evidence of the statements referred to in the finding on the ground of immateriality and that is the only ground briefed. The statements tend to support the agreement. These exceptions are not sustained.

Finding 21 is excepted to on similar grounds. The plaintiff excepted to the admission of evidence of the statement mentioned in this finding on the grounds that it was immaterial and irrelevant. The statement tends to support the claimed agreement. The plaintiff argues on his exception to the evidence an additional ground of objection, for which no exception was saved, that it was not admissible because the statement was not made in defendant's presence and that there was no proof that the offer was communicated to her. However, the use of the word "persuade" shows that the statement is a recitation of what Mr. Scott had told the defendant. These exceptions are not sustained.

Finding 22 is excepted to upon similar grounds. The plaintiff excepted to the admission of evidence of the statement mentioned in the finding only on the ground that it was immaterial and irrelevant. This statement was clearly admissible as an admission tending to support the claimed agreement. We need not consider the additional objections to its admission first suggested in plaintiff's brief. These exceptions are not sustained.

The plaintiff excepted to finding 18 on the ground that it was based upon the erroneous admission of the mentioned letters in evidence. The only exceptions that are briefed relate to Exs. A and B. A is the letter dated March 1, 1939. B is in two sheets or pages, the first of which is dated September 26, 1940, and the second page is referred to in the finding as another letter not dated, which is a part of Deft's Ex. B. The objections to these two exhibits were that no envelopes were offered and that there was no evidence that they were received by the defendant, or that the subject matter was ever communicated to her. It is argued that for aught that appears Mr. Scott may have written them, thought better about sending them, placed them in his files, and the defendant might have come by them after his decease. In view of their content and the relations of the parties, and the fact that these letters are entirely consistent with the other evidence produced, no such suspicion can be indulged, and we can see no reason why the very fact of the defendant's possession of them does not carry the presumption that she received them from Mr. Scott. See *Austin* v. *Long,* 1 Ga App 258, 57 SE 964; *Armistead* v. *Brooke,* 18 Ark 521; *Gosney* v. *Costigan,* 326 Mo 1215, 33 SW2d 947. The plaintiff further excepted to the admission of B on the grounds that the first page shows that it is written in a different ink from the second page, and the second page shows that it is not a continuation of the first page, but apparently is an excerpt from some other letter. The two pages are written in different ink, and the second page does not connect with the first page unless some word is supplied at the bottom of page 1 to cover an apparent omission. The finding treats the second page as another letter. Although the defendant in offering the exhibit claimed that the two pages went together, we see no error in the manner in which the chancellor treated them. Each page was in Mr. Scott's handwriting and would have

been admissible separately. As the exceptions to the admission of the other letters are not briefed they are waived, and the exception to the finding as respects these letters is of no avail. The exceptions to the admission of the letters and to the finding are not sustained.

Under the exceptions to finding 23 the only point briefed is that there is absolutely no evidence of any arrangements having been made at Manchester for the defendant to move back to Newport pursuant to any agreement between them. The circumstances and the findings previously mentioned, plus the content of Ex. C furnish adequate evidence from which these facts can reasonably be inferred. These exceptions are not sustained. Although not briefed to this exception it is appropriate at this place to discuss Ex. C. and the statement in the finding that it is a contract because of claims made relative to subsequent findings. Both parties agree that this exhibit is not a contract. The plaintiff in his brief also says that the instrument plainly shows that the defendant intended to sign as a witness. It is clear from the findings that the chancellor used the word "contract" inadvertently, as he has found what the contract was in subsequent findings. Although it is agreed that the exhibit is not a contract, it is, however, a piece of evidence tending to show some terms of the agreement made. The only direct evidence concerning the signing of the exhibit came from the witness John Hamer, who testified that he saw Mr. Scott sign it at Newport, and that when he first saw the paper it was all made out. Since the paper is in Scott's handwriting and is headed with the date and "Manchester, N. H." it is an admission by Scott that it was written on its date at Manchester, and is direct evidence from which the chancellor could so find.

Finding 24 is excepted to on the ground that it is immaterial, that there is no evidence that the defendant did what the finding states by virtue of any contract, express or implied, between her and Mr. Scott, and that there is no evidence that the heating of the apartment as long as she lived was any part of the claimed contract. Ex. C and the other evidence mentioned in the previous findings, and finding 25, to which no exceptions are briefed, relative to the central heating plant, are sufficient to warrant the reasonable inference that the facts are as stated in the finding.

Finding 28 is excepted to because of the claimed erroneous ad-

mission of certain testimony of the defendant as follows: The defendant was called as a witness to testify to conditions arising after the death of Mr. Scott, and subject to the exception that she was incompetent to testify to the terms of the agreement with Mr. Scott, and that it was immaterial and irrelevant, was permitted to testify that lights for the entire basement were on her meter, that she asked the plaintiff to take the light off her circuit, and he replied, "What of it." This evidence had no tendency to prove the terms of the agreement, and was admissible on the question of equitable relief to which the defendant was entitled in case the chancellor should find the agreement to be as she claimed. Under P. L. 1695 the defendant was competent to testify to acts done since the probate of the will.

The plaintiff excepted to finding 45 on the grounds that it ignores and overlooks the overwhelming weight of the evidence establishing the facts set forth in the enumerated requests for findings; that the contract upon which the defendant bases her claim claiming it to be a contract, shows upon its face that Arthur Scott was to occupy the same room with her, and that this was the contemplation of the parties at the time Scott signed it; and that the finding is contradictory to finding 23. The requests referred to were:

"10. The letters, Plaintiff's Ex. 6 to 85 inclusive, clearly indicate something more than a mere platonic relationship between the deceased, Arthur Scott, and the defendant, and in fact indicate during the period they cover an illicit or meretricious relationship between the parties as existing.

"11. Defendant and deceased occupied the same room together at a rooming house in Newton at one time during the summer of 1940.

"12. The letters (Plaintiff's Ex. 6 to 85 inclusive) and the conduct of the parties up to April 6, 1941, and subsequently, and the evidence clearly indicate that a literal construction of the phrase 'I A. F. Scott is to . . . . . room with Mrs. Beland' was intended by the parties, and it was contemplated thereby that the said Scott was to occupy the same room and bed with Mrs. Beland.

"13. On two occasions after the execution of defendant's Ex. C a neighbor found Scott occupying Mrs. Beland's bed."

■ The plaintiff duly excepted to the failure of the chancellor to comply with these requests. The findings set out the content of a number of the letters referred to in requests 10 and 12, the first dated January 9, 1939, and the last October 27, 1940, and show that Mr. Scott kept an accurate book account of money paid out, and his books show that he sent the defendant in 1939, $114.15, and $56.53 in 1940, and that in many instances her letters acknowledge small sums of money sent her. Plaintiff's brief does not call our attention to any other letters, and we limit our comments to those set out in the findings. Several of these letters are couched in endearing terms and are signed with love and kisses. Several ask for money. Some express a longing for Mr. Scott. They do not, however, necessarily indicate the relationship mentioned in request 10.

The only evidence concerning the matter mentioned in request 11 came from Mabel Wrench, and she testified that it occurred in 1938, rather than in 1940 as the request states, so the request was properly denied. Moreover, Oliver Beland, her husband, who she testified was present on the occasion, testified that he didn't know any such thing ever happened. Mrs. Wrench was an interested witness, and the chancellor didn't have to believe her. *Taylor* v. *Henderson,* 112 Vt 107, 116, 22 A2d 318.

Request 12 omits a material part of Ex. C. Mr. Scott was to "board and room" with Mrs. Beland, not simply "room" with her. The letters and the conduct of the parties do not compel the inference claimed.

■ Relative to request 13, a neighbor testified about visiting at 107 and finding Mr. Scott in the defendant's bed on two occasions, once when he had fallen off a ladder and was laid up for a few days, and once when he was sick the winter before he died. The witness knew that it was defendant's bed because the defendant said it was her room, and that he was in there because it was more pleasant than his room. The circumstances qualify the matter of the request, and it was not error to fail to find exactly as requested, or to deny the request altogether. *McClary* v. *Hubbard,*

97 Vt 222, 240, 122 A 469; *Peck* v. *City Trust Co.,* 104 Vt 20, 29, 156 A 403; *Nelson* v. *Travelers Ins Co.,* 113 Vt 86, 99, 30 A2d 75.

In view of the fact that Mr. Scott was in his 81st year when he died, and was over 70 when his wife died, and at least 78 when the defendant returned to Newport, and the defendant was 61 years old a year ago we do not think that the evidence and the necessary inferences compelled the chancellor to find other than as he did. The statement that the "court is unable to find" does not necessarily mean that there was no evidence tending so to show, but it does mean that such evidence, in the trier's judgment, does not preponderate, and so, in a legal sense, the court was unable to make such a finding. *Haskins* v. *Haskins' Estate,* 113 Vt 466, 470, 35 A2d 662, and cases cited. The exceptions to the finding are not sustained.

The exceptions to finding 46 as briefed are that there is no evidence to support it, that it is a mere conclusion of the chancellor, and that it bases inference upon inference. The plaintiff insists that there was no evidence that Ex. C. was shown to the defendant at Manchester, and that it was improper for the chancellor to infer that it was drawn up at Manchester, and then to infer on that inference that it was shown to her there. As we have shown under the exceptions to finding 23, there was direct evidence from which the chancellor could find that this paper was drawn up at Manchester. From the facts that the paper was written at Manchester and Scott had just previously been living with the defendant at Manchester the chancellor could reasonably infer that it was shown to the defendant there, without basing an inference upon an inference. These exceptions are not sustained.

The exceptions to finding 47 are that there is no evidence to support it, that it is contradictory to the letter written September 26, 1940, wherein the deceased is claimed to have said, "Come back where I can take care of you," and that the finding leaves all the findings on the matter of contract to speculation and conjecture, whether it was Ex. C or a partly verbal and partly written agreement. We see no particular inconsistency. As we stated under the exception to finding 24, the evidence recited in the other findings is sufficient to support the finding. These exceptions are not sustained.

The exceptions to finding 48 are that there is no evidence to

support it, and there is no clear cut statement in the findings as to what the agreement was, and what it was is left to speculation and conjecture. Finding 47 gives a clear cut statement of the agreement. Finding 24 supports this finding. These exceptions are not sustained.

The exceptions to finding 49 are that there is no evidence to support it, the finding ignores the terms of Ex. C, and the evidence set forth in requests 10, 11, 12 and 13, and is an erroneous conclusion of law. For the reasons previously stated these exceptions are not sustained.

The exceptions to finding 50 as briefed present the question of the admissibility of evidence and the sufficiency of the evidence, all previously considered. These exceptions are not sustained.

The plaintiff excepted to the failure to comply with his request number 21, which reads as follows:

> "21. Defendant did not return to Newport on the strength of any verbal promises ever made to her by the deceased or made to others and communicated to her that she would get rent free as long as she lived if she returned and kept house for him and looked after him."

Under his exception the plaintiff argues that since Ex. C was not signed until the defendant had returned to Newport, then on the defendant's theory of the case she must have returned on the strength of verbal representations to her, and he insists that no such representations are proven. We think that the circumstances and evidence recited in the findings warrant a reasonable inference that such representations were made. This exception is not sustained.

In his exception to the decree the plaintiff insists that the decree does not conform to the answer and cross-bill. He calls attention to the following statements in paragraph 4 where the substance of the answer and cross-bill is set forth:

> "that while at said Claremont and Manchester the said Scott visited her and offered if she would move back to Newport and take care of him he would pay for moving her goods back and would give her rent

> free and heated as long as she lived, the tenement No. 107 Main Street in Newport City, and that he would pay all their living expenses; that in Manchester in April, 1941, she agreed to his offer and he thereupon made out the writing set forth above, the same to be signed when she had moved back to Newport; thereupon he paid for moving her goods back to said Newport and then signed said writing in her presence and of John Hamer;"

In his brief he singles out and divides the above statements into three parts, and states the particular objection to each part separately. The first part ends with the words "their living expenses," the second part ends with the words "the same to be signed when she had moved back to Newport," and the third part is the balance of the quotation. He insists that the first part is not proven. We need only to recur to what we said concerning the last exception and to findings 24 and 47 and our comments concerning same to answer this claim. As to the second part he says it has not a single bit of evidence to sustain it for the reasons stated under Exception 14 which he asks to have considered hereunder. Plaintiff's Exception 14 as numbered in his brief is the one to finding 23. As we have stated, the only point briefed under that exception is that there is absolutely no evidence of any arrangements having been made at Manchester for the defendant to move back to Newport pursuant to any agreement between the parties. No other point was adequately briefed. This objection is not sustained. As to the third part the plaintiff says that the findings are to the effect that the defendant executed Ex. C as a party thereto. Our comments upon the exceptions to finding 23 answer this objection.

The plaintiff in further objections to the decree renews all the questions previously raised about the admission of evidence, about the findings and the denial of his requests, which we have said are without merit.

*Decree affirmed with costs.*