CARL M. DWINELL ET ALS. *v.* MANDO L. ALBERGHINI.

(62 A2d 124)

October Term, 1948.

Present: MOULTON, C. J., BUTTLES, JEFFORDS and CLEARY, JJ. and ADAMS, Supr. J.

Opinion filed November 3, 1948.

*Lee E. Emerson* for the plaintiffs.

*C. O. Granai* for the defendant.

MOULTON, C. J.   This is a proceeding in equity, wherein the plaintiffs seek to restrain the defendant from obstructing a claimed right of way over the latter's premises.   After hearing and filing written findings of fact the decree was adverse to the plaintiffs and they have brought the cause to this court upon exceptions taken to certain findings, to the failure of the chancellor to comply with certain of their requests for findings, and to the decree.

It appears that the plaintiffs and the defendant own adjoining lands and buildings thereon situated on the westerly side of Main Street in the Village of Orleans.   The plaintiffs are tenants in common of the premises owned by them, which are situated southerly of those of the defendant.   There are business blocks on both properties.   The respective titles of the parties are derived from a common grantor, through various mesne conveyances.   The plaintiff Dwinell acquired his interest in 1905, and the plaintiffs Converse obtained theirs in 1945.   The defendant's deed was executed to him in 1927.   None of the conveyances contain any mention of a right of way.   There is a space used as a driveway between the buildings on the respective properties which is 27 feet wide where it touches Main Street, but which is narrowed to 23 feet farther to the west by reason of a cement walk and a porch built upon the southerly side of the defendant's building.   The boundary line as surveyed between the two properties is 12 feet northerly from and parallel with the northerly side of the plaintiffs' block, not quite in the middle of the space between the respective buildings.   There are two driveways branching off from the open space at the rear. One turns to the south, circles behind the plaintiffs' building and reaches Main Street at its southerly side.   The other proceeds in the opposite direction and goes around the defendant's building to Main Street.   The plaintiffs claim a right of way over the defendant's part of the space between the two buildings, based upon long continued user, adversely and under claim of right by themselves and their tenants, their predecessors in title and their tenants and the general public.

The findings state that two years after he bought his property the defendant repaired the driveway leading from the street on his

southerly side by having sand and gravel brought in and spread upon his part of the space so as to keep surface water from entering his cellar and to make the driveway on his side more passable and attractive. In doing so he may have put a very little of this material on the plaintiffs' land. Each spring, and sometimes in the fall, thereafter he placed road blocks on his land to prevent travel over it during the muddy seasons.

For the past three winters the village of Orleans has plowed the snow so that there has been a driveway around the plaintiffs' building and midway between the buildings of the parties. Before the village started to perform this work the defendant shoveled a driveway on and around his own property, assisted at times by the plaintiff, Hazen Converse, when the latter was a tenant in one of the defendant's garages.

The occupants of certain tenement houses in the rear of the properties of the parties have for many years used the passage way between the garages of the parties as a means of access to Main street but the chancellor is unable to find whether they passed over the plaintiffs' or defendant's land in going to the street. One Hiram Allen at one time asked permission of the defendant to place planks upon the passage way to cover the mud thereon. Recently trucks, not connected with the plaintiffs', or their tenants', business, have been driven around the back of plaintiffs' building and to the street and very close to the defendant's porch and his plate glass window, and the defendant's request to keep off his land has been answered with insulting and abusive language. Other trucks, delivering goods to a drug store occupying a part of the plaintiffs' premises, may have been driven at times over on the defendant's land for a distance of six to eighteen inches, but such use of his premises has not been continuous, adverse or under claim of right during the period of the defendant's ownership. Other traffic entered from Main street and went around the other way. The defendant and his predecessors in title used the open space between the two blocks to go to and from Main street and the rear of the defendant's property.

The findings state that the evidence of the use of the space was so uncertain and indefinite as to whether it was upon the plaintiffs' land or upon some portion of the defendant's land that the chancellor is unable to find that any particular portion of the defendant's

property was ever so used by the plaintiffs, their predecessors in title, their tenants or the general public openly, continuously, adversely and under a claim of right for a period of fifteen years. It is also found that the defendant has used his property, ever since he purchased it in 1927, openly, notoriously, continuously, uninterruptedly and under a claim of right, substantiated by his deed to the same. In 1946 the defendant placed two large logs along the land he claimed to own adjacent to the plaintiffs' land and one of these logs is now upon the plaintiffs' land, but the chancellor is unable to find upon the evidence how far it is over the boundary line or that it has caused the plaintiffs any damage.

The first exception briefed was taken to a finding that the defendant, within two years after acquiring his title, had about 100 loads of sand and gravel placed upon the driveway on his land adjoining the plaintiffs' property, and that he placed road blocks upon his property during muddy seasons in the spring and fall. One ground of exception is that the evidence was that only 75 loads of sand and gravel were brought in. Obviously, this discrepancy is entirely immaterial to any issue in the case and too trivial to be considered. Another ground is that there is no evidence that the defendant had any separate driveway that he could call "his driveway". But this phrase is not used in the finding, and, since it has elsewhere been found that he owns the land which he claims, the objection has no force. It is also argued that there was testimony that there were mud holes in each side of the line between the two properties and that the road blocks were for the purpose of protecting both sides. There was, however, testimony that the obstructions were placed only on the defendant's side and for his own protection and whatever incidental benefit to the plaintiffs might have been intended, or have actually accrued to them, by the defendant's act, does not affect the question of his rights.

The second exception challenges the finding that "the occupants of the tenements in the rear of the plaintiffs' and defendant's properties . . . have for many years used the passageway between the plaintiffs' garage and the defendant's garage and about ten years ago one Hiram Allen asked permission to put some planks between the two garages because there was mud there, but the Court is unable to find whether said persons going through the passage way between the two garages used the plaintiffs' land or the defendant's land in reaching Main street."

■ It is argued that it is a matter of common knowledge that a person passing through the narrow space of four feet would not keep to one side or the other but would walk through the middle of the path. This may be so, but, as the plaintiffs point out in their brief, the evidence as to the use of the passageway would not detract from their claim of a right of way over the defendant's part of the land lying between the buildings of the parties. The finding, even though unwarranted, which we do not decide, is of such small importance that reversible error does not appear. Furthermore, the finding may be reasonably taken to refer to the course taken by pedestrians after they had left the passage way and entered the disputed territory between the buildings. In support of the decree we are bound so to construe it. *St. Germain's Admr.* v. *Tuttle,* 114 Vt 263, 272, 44 A2d 137; *Stratton* v. *Cartmell,* 114 Vt 191, 197, 42 A2d 419. No evidence has been called to our attention that would fairly indicate on whose land these persons walked after they had passed between the garages.

■ The plaintiffs contend that, with regard to the permission to place planks upon the passage way, the chancellor has accepted the testimony of the defendant over that of Hiram Allen. Even though these witnesses directly contradicted each other this finding would stand, because the questions of credibility and weight of the evidence are, under such circumstances, for the trier of fact, and all conflicts must be resolved against the excepting party. *Taylor* v. *Henderson,* 112 Vt 107, 111, 22 A2d 318; *Guibord* v. *Guibord,* 114 Vt 278, 280, 44 A2d 158. However, there was no direct contradiction here; the defendant testified positively to the request by Allen for permission to put down the planks, while Allen said that he could not remember the incident. No error is shown with regard to the finding.

The next two exceptions may be considered together. One was taken to the statement that the chancellor is unable to find that the plaintiffs or their tenants or the general public ever used any particular portion of the defendant's land openly, continuously, adversely and under a claim of right for a period of fifteen years. The other, to a similar statement of his inability to find that the plaintiffs or their predecessors in title or the general public have used the defendant's land in this manner since the defendant began to improve his land lying south of his block.

██ ██ The statement that the chancellor "is unable to find" does not necessarily mean that there was no evidence tending to show the claimed fact, but that such evidence, in his judgment did not preponderate in its favor. *Scotts' Ex'r.* v. *Beland,* 114 Vt 383, 397, 45 A2d 641; *Haskins* v. *Haskins,* 113 Vt 466, 470, 35 A2d 662; *Miller* v. *Rossier,* 107 Vt 479, 482, 181 A 105. The burden of proof as to the issue of adverse use being upon the plaintiffs, the statement is equivalent to an affirmative finding for the defendant. *Sparrow* v. *Cimonetti,* 115 Vt 292, 58 A2d 875, 881; *Partridge* v. *Cole,* 98 Vt 373, 377, 127 A 653. On argument it was conceded by the plaintiffs' counsel that there was some evidence to support the two findings, but it was claimed that such evidence was slight and that the chancellor paid attention only to the evidence on behalf of the defendant, ignoring that produced by the plaintiffs. We must assume, the contrary not appearing, that the chancellor carefully and impartially considered all the evidence bearing upon the issue in making his findings. *Guibord* v. *Guibord,* 114 Vt 278, 283, 44 A2d 158; *Taylor* v. *Henderson,* 112 Vt 107, 114, 22 A2d 318; *Putnam* v. *Woodward,* 111 Vt 39, 43, 10 A2d 186. Not only does the contrary not appear, but an examination of the transcript shows evidence which fairly and reasonably tends to support the chancellor's statement. Since this is so the findings must stand. *Village of St. Johnsbury* v. *Cenedalla,* 109 Vt 174, 181, 194 A 382. What has been said concerning the above exceptions disposes also of one taken to the refusal to comply with a request for a finding that the plaintiffs' and the defendant's respective predecessors in title, their tenants and their tenants' invitees had used the space between the blocks as a common passage way, uninterruptedly, continuously, adversely and under claim of right during the time of such predecessor's ownership of their properties. These exceptions are not sustained.

██ ██ In this connection it is to be noted that the burden was upon the plaintiffs affirmatively to prove all the elements of the adverse user by which they claimed an easement. *D'Orazio* v. *Pashby,* 102 Vt 480, 485, 150 A 70. Prima facie the defendant's enjoyment of his land was an exercise of his right so to enjoy it, and it was for the plaintiffs to show that what he did with reference to his property was consistent with their claim and not for him to show that his actions were inconsistent with it. *Plimpton* v. *Converse,* 42 Vt 712, 718.

■ The plaintiffs also excepted to the finding that the defendant has used his property openly, notoriously, continuously, uninterruptedly and under claim of right, substantiated by his deed, ever since he purchased it in 1927. Even though the plaintiffs and their predecessors in title had acquired a right of way over the defendant's land, prior to his ownership of it, the easement would be extinguished by his open, notorious, hostile and continuous possession, as owner of the servient tenement, for the statutory period of 15 years. *Nelson* v. *Bacon,* 113 Vt 161, 172, 32 A2d 140; *Scampini* v. *Rizzi,* 106 Vt 281, 286, 172 A 619. The evidence concerning his improvement of his land as far as the line between it and the plaintiffs' land and his acts in placing road blocks thereon has already been mentioned. Other evidence tended to show that he ordered parked cars and trucks to leave his premises, that he stopped vehicles from coming upon his land, that he built the cement walk along the southerly side of his block and that he made repeated assertion of his right to prevent others from using his property as a driveway. It cannot be said that the finding is without evidentiary support.

The next exception challenges the finding that in the fall of 1946 the defendant placed two large logs along the land he claimed to own adjacent to the plaintiffs' land and one of the logs is now upon the plaintiffs' land, but how far it lies over the boundary line or that it has caused any damage to the plaintiffs, the chancellor is unable to find upon the evidence.

It appears that, pursuant to a preliminary injunction issued pending the hearing in this cause, these logs were removed by the defendant from their original position. One was placed against the side of his building, and the other was taken to the rear of his premises. It is the latter log to which the finding refers as being on the plaintiffs' land. The grounds of this exception are that there is no evidence to support the finding, and that the finding evades the issue of damage caused by the logs as first laid upon the land claimed to be the property of the defendant. The first ground is inadequately briefed, for nothing is said concerning it in the plaintiffs' brief beyond its bare statement. *State* v. *Schwarzchild,* 112 Vt 167, 172, 22 A2d 157. No claim is made that the log in its present situation has caused damage. Indeed, the decree has ordered its removal from any part of the plaintiffs' property. The

testimony to which we are referred in support of the second ground of exception relates to the difficulty of motor trucks coming from the rear of the plaintiffs' block in getting around the logs as first laid down. But, since this was done upon the land which has been found to belong to the defendant and over which the plaintiffs do not possess a right of way, no legal damage has been caused to them.

The plaintiffs have briefed exceptions to the refusal of the chancellor to comply with three of their requests which are alike in substance and may be considered together. The first of these requests is that the chancellor should find that for a period of at least 50 years up to the time of the defendant's acquisition of his property, the owners of his land and the owners of the plaintiffs' land acquiesced in the use of a portion of their respective premises as a common passage way between their buildings for their mutual convenience. The second is that from the time the defendant's block was built there existed a passage way between it and the plaintiffs' block, partly on the defendant's and partly on the plaintiffs' premises, for the common use of the owners and occupiers of both premises. The third is that such use was by consent of the owners of both properties at least up to the time the defendant purchased the property now owned by him.

As we have seen, by his expressed inability to find an adverse user by the plaintiffs, their predecessors in title, their respective tenants or by the general public, the chancellor found in effect that there had been no such user by any of them. Furthermore, the requests relate to a period prior to the defendant's ownership, and the finding concerning the nature of his enjoyment of his property implies that, if there had previously existed a right of way over it, the easement had been extinguished. In view of these findings there was no error in the refusal to comply with the requests. See *Nelson* v. *Travellers Ins. Co.,* 113 Vt 86, 99, 30 A2d 75.

Another exception was taken to the refusal to comply with a request for a finding that: "Defendant has no objection to the use of the roadway between his premises and the premises of the plaintiffs by plaintiffs, their tenants and business invitees. His whole trouble arises according to his own admission from the use of the roadway by one individual."

The evidence shows that the person referred to was the op-

erator of a truck, not connected with the business of the plaintiffs' tenants, who drove his vehicle very close to the defendant's porch and a plate glass window in his building, replied to the defendant's protest with threatening and abusive language, and on one occasion met the defendant on the street and assaulted him because of the latter's objection. This conduct might well be held to show an improper use of an easement, if one existed, and, in such case, could not fairly be attributed to the plaintiffs. But the fact that the defendant has no objection to the use of his driveway by the plaintiffs or their tenants would not, as the plaintiffs contend, negative an adverse possession on his part. It would tend to show his willingness to accord a permissive use. It would not detract from his complete title to his land. No error appears in the refusal of this request.

By the last exception the plaintiffs claim that the decree is not supported by the findings. It is enough to say regarding this contention that the contrary appears.

All the questions briefed have been considered, with the result that no reversible error has been shown.

*Decree affirmed.*