## Everlasting Memorial Works v. Huyck Monument Works

[258 A.2d 845]

No. 1913

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*Ryan & Ryan,* Montpelier, for plaintiff.

*McKee & Clewly,* Montpelier, for defendant.

**Smith, J.** This is an appeal from the judgment order of the Washington County Court, in favor of the defendant, dated

June 26, 1967. Findings of Fact were made and plaintiff has taken exceptions to certain of such findings as well as the resultant judgment order.

■■ Involved here is a sum of money due for certain granite monuments, tablets and markers which the plaintiff claims is due him from the defendant. The questions presented are factual to a great degree and our rule is that the lower court's findings must stand if there is any evidence fairly and reasonably tending to support them. *Leno* v. *Meunier*, 125 Vt. 30, 34, 209 A.2d 485. And we must read the evidence in support of the findings, if reasonably possible, when considered as a whole. *Little* v. *Little,* 124 Vt. 178, 182, 200 A.2d 276.

There is no disagreement on certain facts in the case before us. Between November 1961 and April 1962, eight monuments were ordered from the plaintiff by Margaretville Granite Works of Margaretville, N.Y. The plaintiff is in the business of preparing and finishing monuments for erection. While this is not mentioned in the findings of fact, the evidence in the transcript before us establishes that because of the credit relations between the plaintiff and the Margaretville Granite Works, any shipments made by the plaintiff to that concern were on a C.O.D. basis.

The dispute between the parties in the case gets down to the question of whether the defendant, Huyck Monument Works, to whom the monuments were eventually shipped, assumed the debt due from the Margaretville concern to the plaintiff as its own.

Those findings of the lower court which are of vital importance to the settling of this question, and to which exceptions were taken and briefed by the plaintiff, are stated below:

"3. These monuments were charged to the Margaretville account.

4. They were delivered by Clark's Transferring Service, Inc. to Huyck Monument Works. Huyck paid the freight for the shipment of the monuments, although Margaretville was billed by the defendant for the freight and for setting stones.

5. The Court cannot find that the defendant purchased Margaretville's business nor can the Court find that the

defendant ever promised to pay the account of the said Margaretville Granite Works, therefore it finds for the defendant in this matter."

The exhibits introduced in evidence in the case below show that each of the various monuments for which payment is now sought was ordered by the Margaretville Granite Works, and enclosed with each order is an apparent copy of the acknowledgment of the individual order, sent in return by the plaintiff to the Margaretville concern, setting forth the details of each monument, the date of receipt of the order, the date when the order is to be shipped and stating the terms are to be C.O.D.

It is apparent from the testimony in the transcript that the Margaretville shop was in rough financial straits at the time the orders were sent to the plaintiff, which was known to the plaintiff and accounted for the C.O.D. terms of payment. It is from this point on that the evidence in the case becomes varying and contradictory.

With the exception of a Mr. Clark, a trucker, who testified that he delivered the monuments in question to Mr. Huyck, and received payment from the Huyck firm for his trucking charges, the only other witnesses were Mr. Huyck, the defendant, and Mr. Almo Cecchini, the General Manager of the plaintiff granite concern. It was the testimony of Mr. Cecchini that he was informed by Mr. Munroe, of the Margaretville monument company, that he had sold his business to Mr. Huyck and that Mr. Huyck would assume the debt for the various monuments when they were delivered. It was also Mr. Cecchini's testimony that he confirmed this information with Mr. Huyck, both on the telephone and by a personal visit to him, in which Mr. Huyck also confirmed that he had taken over the former business of Margaretville and would pay for the monuments when delivered to him.

The testimony of Mr. Huyck was that he did not take over the Margaretville business, but did receive part of their equipment from Mr. Munroe in partial payment of a debt owed by Margaretville to him. His explanation was that he was what is known in the monument trade as a "setter", that is, one who places the monuments in the particular place designated by the monument dealer. He offered evidence that he had on previous times paid the freight bill to the trucker when the

monuments were delivered to the site where they were to be set, although not assuming in any way to pay for the actual charges for the monuments. He denied ever informing Mr. Cecchini that he would pay for the monuments himself, and also denied that he was paid by those persons who had actually first ordered the monuments from the Margaretville Works.

The appellant first contends in its brief that the Statute of Fraud is not a valid defense in this case. However, such a defense was not pleaded by the defendant as required by 12 V.S.A. Sec. 1022, and there is admittedly no agreement in writing between the plaintiff and Huyck by which the latter assumed to pay the debt due the plaintiff from the Margaretville Granite Works. We find no argument by the defendant that he is relying on the Statute of Frauds as a defense. What apparently the plaintiff does claim is that there was a novation effected. It is his contention that the uncontradicted evidence clearly establishes that the contract between Everlasting and Margaretville was extinguished by agreement between Everlasting, Margaretville and Huyck, that Huyck was accepted in the place of Margaretville, and that Huyck received the benefits which might have flowed to Margaretville under the contract, and that Huyck must properly be regarded as having assumed the obligations formerly assumed by Margaretville. In support of this theory he cites us the case of *H. P. Hood* v. *Heins, et al.*, 124 Vt. 331, 205 A.2d 561.

In that case, written by Chief Justice Holden, it was stated:

"To constitute a novation there must be a valid existing contract which is extinguished by mutual agreement between the original obligors and obligees and the new party. It is the mutual understanding that the stranger is accepted in place of the first obligor that discharges the original undertaking and transfers the obligation to the new participant."

But in the case before us the evidence is not undisputed that such a novation took place. As far as the findings and transcript disclosed no three-way meeting was ever held between Margaretville, plaintiff and the defendant Huyck. Plaintiff's testimony that such an arrangement was made by his telephone calls and personal visitations to the other parties

is disputed by the evidence of Huyck, whose evidence is directly to the contrary. Questions of credibility of the witnesses and the weight of the evidence were for the trier of facts to decide, and all conflicts must be resolved against the excepting party. *Dwinell* v. *Alberghini,* 115 Vt. 394, 398, 62 A.2d 124.

Viewed in the light most favorable to the defendant, while he did take over some of the working machinery of the Margaretville Granite Works, it was done only to receive partial payment of a debt still wholly unpaid from Margaretville. Exhibits introduced from the records of Mr. Clark, the trucker, disclosed that it was not unusual for a "setter" to pay the freight bill on a shipment of granité, received by him at the place where such monuments were to be erected, but with the payment for the monument orders being the responsibility of the ordering firm. While defendant personally did return a defective monument base to the plaintiff for replacement, according to his undisputed testimony it was at the request of Mr. Munroe of the Margaretville Granite Works, his testimony was firm that he never engaged in any way to take over the debts of the Margaretville Granite Works, with particular reference to Margaretville's contracts with the plaintiff.

█ It is also contended by the plaintiff that Section 1548 of Title 9, V.S.A., has special application to the facts in this case as a test of whether defendant accepted the monuments in question.

> "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

But this section is only applicable when there comes a dispute between an undoubted buyer and an undoubted seller. In the instant case the whole question is whether the defendant was a buyer, and the lower court found otherwise. Hence the section has no application.

The findings made by the lower court are far from lengthy, and could be designated as terse and brief. While as set forth in *Neverett* v. *Towne*, "In making finding of fact it is the duty of the Court to sift the evidence and state the facts", the opinion also makes clear that findings which do dispose of the issues presented, will sustain the judgment. *Neverett* v. *Towne*, 121 Vt. 447, 458, 159 A.2d 345.

Brief although they may be, we think the findings made below are sufficient to support the judgment rendered. Finding No. 5 states, "The Court cannot find that the defendant purchased Margaretville's business nor can the court find that the defendant ever promised to pay the account of the said Margaretville Granite Works." This finding went to the crux of the whole case, and it is a finding that is supported by competent evidence.

The appellant claims error in Finding No. 3 of the lower court that the monuments produced by the plaintiff were charged to the Margaretville account. The exhibits offered by the plaintiff show that all the monuments were charged to the Margaretville account at the time they were received on March 12, 1962 and that correspondence was exchanged between Margaretville and Everlasting regarding the order. The monuments were delivered to Mr. Clark, the trucker, on April 30, 1962. While there is a penciled notation of uncertain date in the ledger of the defendant that this account was to be taken over by Huyck, as a result of a telephone conversation with parties not designated, the ledger shows the charge was to Margaretville.

Not until Dec. 31, 1963 is there a record in the exhibits admitted in evidence, of a bill being sent to Huyck for the monuments in question, which bill was promptly returned to the defendant with the notation, apparently by Huyck, "As you well know this *is not* our account." The notation also gave the plaintiff the then address of Mr. Munroe, to whom the monuments were originally charged. Under the state of the evidence before it, the lower court cannot be held in error in making Finding No. 3. What has just been said applies with equal force to the exception of the plaintiff to part of Finding No. 4. The overwhelming weight of evidence before the lower court was that Huyck was never billed by Everlasting

for the disputed monuments until December 31, 1963, some twenty months after the monuments had been put in the hands of the trucker and after their erection in April, 1962.

The plaintiff also objects to Finding No. 5 which stated that the Court could not find that the defendant purchased the business of Margaretville nor that the defendant ever promised to pay the account of Margaretville Granite Works. It is true that the evidence of the plaintiff was to the contrary, but equally positive was the evidence of the defendant that he did not purchase the business of Margaretville, nor that he ever agreed to pay the accounts owed by that company to the plaintiff. The weight of the evidence given, and the credibility of the witnesses was for the consideration of the lower court, and not for us to consider here.

■ While the plaintiff, in its brief, cites only the evidence before the court which was favorable to its cause before the court, the court was also confronted with evidence of at least equal force and credibility in favor of the position of the defendant that he never assumed the responsibility of Margaretville to pay the plaintiff for the monuments for which payment is sought from him by the plaintiff. It was the right of the lower court to determine the weight of the testimony presented by the parties to it, the credibility of the witnesses that appeared before it, as well as the exhibits offered in evidence by both sides in the cause before it. This Court cannot substitute its own judgment for that of the lower court on the questions of fact and the credibility of the witnesses for that of the trial court. *Cook* v. *Holden*, 113 Vt. 409, 412, 35 A.2d 353.

The findings of the lower court, although few in number, are supported by the evidence, and the findings support its judgment in favor of the defendant.

*Judgment affirmed.*