## San Remo Realty Corporation v. City of Montpelier and Montpelier Board of Civil Authority

[298 A.2d 810]

No. 191-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 5, 1972

*James M. Jeffords*, Attorney General, and *Martin K. Miller*, Assistant Attorney General, for Plaintiff.

*McKee, Clewley & Fitzpatrick,* and *J. Paul Giuliani, Esq.,* Montpelier, on the brief, for Defendant.

**Daley, J.** This action is an appeal from a judgment order entered in the Washington County Court. That order adjudged the Pavilion Office Building, located in the City of Montpelier, to be owned by the State of Vermont; and as a consequence of that ownership, the City of Montpelier was ordered to pay the State of Vermont the sum of $86,330.00, with interest collected thereon, for taxes it had illegally assessed the appellee, San Remo Realty Corporation.

In the court below this action was originally commenced as two separate causes. The first was a tax appeal brought to the court by San Remo Realty Corporation from an adverse determination by the City of Montpelier Board of Civil

Authority. The other cause, brought in the nature of a declaratory judgment action, was also commenced by San Remo Realty Corporation. Both sought to invalidate the decision of the Board of Civil Authority which denied tax exempt status to the Pavilion Office Building. Because the two causes were one and the same action, the parties moved the court to consolidate them pursuant to V.R.C.P. Rule 42. This motion was granted by the court, and the causes of action were tried as one, thereby not requiring the lower court to pass upon the procedural question raised by taking a tax appeal to that court under 32 V.S.A. § 4461, when the sole issue was the tax exempt status of a parcel of property.

The facts which give rise to this appeal were stipulated to by the parties in an agreed statement of facts, and were incorporated in their entirety by the lower court in its findings of facts. The following is a description of these facts as they have a bearing upon the determination of this appeal.

On March 30, 1966, the State of Vermont purchased from Pavilion Hotel, Inc., the land upon which was situated the old Pavilion Hotel, and received a warranty deed, which was recorded in the Montpelier City Clerk's Office.

In 1969, the General Assembly of the State of Vermont authorized the creation of a special board to act on behalf of the State to negotiate for a lease agreement which provided for the demolition of the Pavilion Hotel, and its subsequent renovation and restoration. Act No. 132 of the Public Acts of 1969. The special board was given until September 1, 1969, to negotiate this agreement, and if it failed to do so, the Pavilion Hotel was to be demolished. Act No. 132 § 3 of the Public Acts of 1969.

The special board, on August 28, 1969, completed negotiations for the agreement authorized in Act No. 132 of the Public Acts of 1969, when San Remo Corporation signed a letter of intent with the special board. In so doing, San Remo Realty Corporation embarked upon what was most aptly described by the State Buildings Director as a "rather unusual building project."

In order to effectuate the terms set forth in the letter of intent, the State of Vermont and San Remo Realty Corporation entered into a series of agreements. These commenced on

November 6, 1969, when the State and San Remo Realty Corporation entered into two agreements known as a ground lease and an occupancy lease. In the ground lease, the State gave to San Remo Realty Corporation a 50-year lease to the premises known as the Pavilion Hotel building and the ground thereunder. Coincidentally with the ground lease and in part consideration therefor, San Remo gave the State a 25-year occupancy lease to the same premises and ground thereunder which it had just acquired from the State in the ground lease. Contained within the occupancy lease was an option enabling the State to purchase all the rights of San Remo in the premises at a price which would have been the same amount San Remo Realty Corporation would have derived from the occupancy lease. The occupancy lease, and the financing arrangements set forth therein, were a prerequisite for San Remo Realty Corporation to construct the Pavilion Office Building.

A separate agreement, known as a construction contract, was also entered into by San Remo Realty Corporation on November 6, 1969, with Pizzagalli Construction Company, Inc. In the construction contract, Pizzagalli Construction Company, Inc., agreed to undertake the demolition, restoration, and renovation of the Pavilion Hotel building.

The ground lease, occupancy lease, and the construction contract were recorded in the land records in the Montpelier City Clerk's office on November 25, 1969. These agreements were the only documents on record in the clerk's office on April 1, 1971, when the City of Montpelier determined who the owner or possessor of the Pavilion Office building was for the purpose of setting taxable real estate in its list as provided for by 32 V.S.A. § 3651. See *e.g. Potwin* v. *Tucker & Bourdon*, 128 Vt. 142, 145, 259 A.2d 781 (1969).

Soon after the signing of the agreements, San Remo Realty Corporation began work on the demolition of the Pavilion Hotel, and the restoration and construction of the building known as the Pavilion Office Building. During this time, San Remo Realty Corporation financed the work through its own resources. However, on April 14, 1970, the State served written notice on San Remo Realty Corporation that it intended to exercise the purchase option contained within the occupancy lease dated November 6, 1970. The option was

formally exercised on May 28, 1970, when San Remo Realty Corporation and the State entered into two agreements known as an amendatory agreement and a construction contract. These agreements amended the prior agreements so that San Remo Realty Corporation now received progress payments for the work done on the Pavilion Office Building pursuant to the terms set forth in the construction contract. The payments received by San Remo Realty Corporation according to the terms of the construction contract were fixed so San Remo Realty Corporation would derive the same profit therefrom, as it would have derived from the occupancy lease. Neither the letter of April 14, 1970, nor the amendatory agreement and construction contract of May 28, 1970, were recorded in the Montpelier City Clerk's office prior to April 1, 1971, the date taxes were assessed on the Pavilion Office Building.

Construction was completed on the Pavilion Office Building around February 16, 1971, and the State occupied it on March 15, 1971.

The City of Montpelier contends that the trial court erred in its conclusion of law that on April 1, 1971, the State of Vermont was the owner of the Pavilion Office Building. It contends that its taxing authority was legally exercised by virtue of the listers placing the subject property in the name of its record owner. It further claims that to allow evidence indicating diversion of the title from the record owner, not of record, contravenes the spirit of the recording statutes and violates public policy respecting reliance upon land records.

■ As was previously stated, this cause was tried below as a declaratory judgment action to determine for purposes of taxation who owned the Pavilion Office Building. That a declaratory judgment action is the proper avenue to determine ownership of property for tax purposes cannot be seriously contended. *Poulin* v. *Town of Danville and Cabot*, 128 Vt. 161, 260 A.2d 208 (1969); *Gifford Memorial Hospital* v. *Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480 (1955).

■ In such actions it is for the court to base its result on what the actual arrangement of the parties discloses, because they are responsible for their own description of the relationship between them. *Sherburne Corporation* v. *Town of*

*Sherburne*, 124 Vt. 481, 483, 207 A.2d 125 (1964). In so doing it then became the duty of the court to make its determination based upon all the agreements, both recorded and unrecorded, which pertained to the ownership of the Pavilion Office Building. This was required to be done by the lower court because, even though unrecorded, the agreements of May 28, 1970, did operate to pass whatever interest San Remo Realty Corporation had in the Pavilion Office Building to the State. 27 V.S.A. § 342; *Spaulding* v. *Fletcher*, 124 Vt. 318, 323, 205 A.2d 556 (1964); *Sowles* v. *Butler*, 71 Vt. 271, 278, 44 Atl. 355 (1899). The trial court properly considered all of the agreements in concluding that the ownership of the Pavilion Office Building rested with the State. Its ultimate conclusion of ownership as a matter of law was based upon its construction and interpretation of the identical documents considered by the listers and Board of Civil Authority.

In viewing the recorded agreements it becomes apparent they constituted a security interest in the Pavilion Office Building for the appellee much as a mortgage creates a security interest in land for a mortgagee. Just as a mortgagee could pledge or assign the mortgage note, the appellee could pledge or assign the agreements representing his security interest. The option to purchase contained within the occupancy lease was no different than a clause in a mortgage allowing the mortgagor to pay his debt prior to the maturity of the mortgage note. Upon the exercise of this option by the State, the leases between the State and the appellee could, and indeed did, terminate.

Any resort to the unrecorded agreements merely served to confirm the primary bases for the court's conclusion and supported the conclusion drawn from the court's careful study of the deed and leases. The listers, although not required to do so by the statute 32 V.S.A. § 3691 resorted solely to the documents of record in the determination of ownership. The trial court utilized their approach to ownership but arrived at a different conclusion. In so doing, it cannot be said, as claimed by the appellant, that when the trial court allowed evidence of the title not of record it violated the spirit and intent of our recording statutes and violated public policy respecting reliance upon the land records. Further, if the court's ultimate

conclusion is supported by the recorded documents found as facts, then the court's consideration of unrecorded evidence which does not destroy but provides support for a supportable conclusion cannot be held to be error.

Last, the appellant contends the court below erred in its construction and characterization of the ground lease and the occupancy lease between San Remo Realty Corporation and the State when it held the State to be the owner. To this end the appellant relies solely upon those provisions of the leases which tend to establish ownership in San Remo Realty Corporation and, thereby, ignoring the provisions which tended to establish ownership in the State. Questions of the weight of the evidence are for the trier of the facts to decide, and all conflicts must be resolved against the excepting party. *Everlasting Memorial Works* v. *Huyck Monument Works*, 128 Vt. 103, 107, 258 A.2d 845 (1969).

Our review of the ground lease and the occupancy lease convinces us the court below had an ample basis upon which to hold the State owned the Pavilion Office Building on April 1, 1971. The determination of the court below having an adequate foundation in the evidence must stand.

*Judgment affirmed.*